IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2009 Session[1]

**SHELBY COUNTY HEALTH CARE CORPORATION,**
**D/B/A REGIONAL MEDICAL CENTER**
**v.**
**JOHN BAUMGARTNER, ELIZABETH BAUMGARTNER, A/K/A DARAY**
**BAUMGARTNER, NATIONWIDE MUTUAL INSURANCE COMPANY,**
**AND HARTFORD ACCIDENT AND INDEMNITY**

An Appeal from the Circuit Court for Shelby County
No. CT-002323-04    Kay S. Robilio, Judge

————

**No. W2008-01771-COA-R3-CV - Filed January 26, 2011**

————

This appeal involves the impairment of a hospital lien. The individual defendant was treated at the plaintiff hospital for injuries sustained in an automobile accident caused by a third-party tortfeasor. The patient incurred substantial medical expenses. The hospital filed a hospital lien for the amount of the patient's medical expenses. Subsequently, the patient received insurance proceeds from his own insurance company under his uninsured motorist coverage, and another payment from the tortfeasor's insurance company. Nothing was paid to the plaintiff hospital. The hospital filed this lawsuit against both insurance companies for impairment of its hospital lien. The parties filed motions for summary judgment. The trial court granted in part the hospital's motion for summary judgment. Against the patient's own insurance company, the hospital was awarded one-third of the monies the patient received. Against the tortfeasor's insurance company, the hospital was awarded an amount equal to the policy coverage limit. The hospital now appeals, arguing that it was entitled to recover from both insurance companies jointly the reasonable cost of the hospital services rendered to the patient. The insurance companies also appeal, arguing that there was no impairment of the lien and that, if there was impairment, the hospital's recovery should have been limited to one-third of the payments made to the patient. We affirm in part and reverse in part, finding that the hospital's lien was valid and was impaired, but that the hospital can recover only for the damages caused by the impairment of its lien.

_____

[1]As explained further herein, this appeal was held in abeyance pending the Tennessee Supreme Court's decision in another case involving similar issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part and Reversed in Part and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

John C. Speer, Colleen D. Hitch, and Tiffany A. Yates, Memphis, Tennessee; Jody Manire Kris and Kelly Thompson Cochran, Washington, D.C., for the Defendant/Appellant, Hartford Accident & Indemnity Co.

Curtis H. Goetsch, Germantown, Tennessee, for the Plaintiff/Appellant, Shelby County Health Care Corporation d/b/a Regional Medical Center

Parks T. Chastain and Gordon C. Aulgur, Nashville, Tennessee, for the Defendant/Appellee, Nationwide Mutual Insurance Company

Robert E. Cooper, Jr., Tennessee Attorney General & Reporter; Michael E. Moore, Solicitor General, and Shayna Abrams, Assistant Attorney General, as intervenor in defense of the constitutionality of Tennessee Code Annotated § 29-22-104(b)(1)

## OPINION

### FACTS AND PROCEEDINGS

### Background

On November 13, 2003, Defendant John Baumgartner ("Mr. Baumgartner") and George H. Brewer ("Mr. Brewer"), both residents of Arkansas, were involved in a two-car automobile collision in Woodruff County, Arkansas. Mr. Brewer was at fault for the collision. Mr. Baumgartner was severely injured in the accident, and was initially brought to a hospital in Arkansas. The next day, in light of the severity of his injuries, he was transferred to the Regional Medical Center in Memphis, Tennessee, a hospital operated by Plaintiff/Appellee Shelby County Health Care Corporation ("The MED").

Upon his arrival, Mr. Baumgartner's wife, Defendant Elizabeth Baumgartner, a/k/a Daray Baumgartner ("Mrs. Baumgartner"), informed The MED's staff that her husband's injuries were sustained when his car was hit by another vehicle. She told The MED staff that the Baumgartners had uninsured motorist insurance coverage under their automobile insurance

policy issued by Defendant/Appellee Nationwide Mutual Insurance Company ("Nationwide").[2]

Mr. Baumgartner was treated at The MED for over a month. He was finally discharged on December 23, 2003. The cost of the medical services rendered to Mr. Baumgartner totaled $529,840.30.

On November 19, 2003, a few days after Mr. Baumgartner's accident, the Arkansas police officer who had arrived on the scene completed a Motor Vehicle Collision Report. This report identified Mr. Brewer as the driver at fault for the collision, and it indicated that he was insured by Defendant/Appellant Hartford Accident and Indemnity ("Hartford"). The report was filed in Arkansas, and The MED did not obtain or receive a copy of it.

On November 25, 2003, while Mr. Baumgartner was still being treated at The MED, The MED filed its initial Affidavit for Hospital Lien for the medical services provided to Mr. Baumgartner. Pursuant to the Hospital Lien Act of Tennessee, Tennessee Code Annotated § 29-22-101, *et seq.* ("HLA"), the lien affidavit was filed with the Circuit Court Clerk for the Thirtieth Judicial District at Memphis ("Circuit Court Clerk"). As required under Section 29-22-102, The MED sent a copy of the hospital lien affidavit to Mr. Baumgartner via registered mail.

Under the terms of the HLA, on January 5, 2004, within thirty days of Mr. Baumgartner's discharge, The MED filed an Amended Affidavit for Hospital Lien. The amended affidavit added Nationwide and updated the amount of the hospital lien to $529,840.30, the total cost of the medical services provided to Mr. Baumgartner. The MED mailed a copy of the amended hospital lien via registered mail to Mr. Baumgartner and to Nationwide. The MED did not name either Mr. Brewer or Mr. Brewer's insuror, Hartford, on the lien, nor did it mail either of them a copy of the lien. The record does not indicate that The MED had actual knowledge of either Mr. Brewer or Hartford at the time it filed the amended hospital lien.

Soon thereafter, on or about January 16, 2004, both Nationwide and Hartford entered into settlement agreements with Mr. and Mrs. Baumgartner. Under the settlement agreements, both insurance companies agreed to pay the Baumgartners the policy limits on the applicable insurance policies. Specifically, Nationwide paid its policy limits of $25,000, pursuant to the uninsured motorist provisions of the Baumgartners' automobile insurance policy. Hartford paid the Baumgartners its policy limits of $100,000, pursuant to Mr. Brewer's automobile liability policy. At the time it entered into the settlement agreement with the Baumgartners, Nationwide had knowledge of The MED's hospital lien. The record does not indicate that

---

[2]Although the Baumgartners had automobile insurance, they did not have medical insurance.

Hartford had knowledge of The MED's hospital lien at the time that it entered into the settlement agreement with the Baumgartners. Hartford did not check with the Shelby County Circuit Court Clerk's office to determine whether a hospital lien had been filed before it paid insurance proceeds to the Baumgartners. All of the total $125,000 in insurance proceeds were paid directly to the Baumgartners, and neither the Baumgartners nor the insurance companies paid any monies to The MED or any other medical service provider.

### Trial Court Proceedings

On April 22, 2004, The MED filed a lawsuit in the trial court below against Mrs. Baumgartner. As damages, the complaint sought the cost of the medical services rendered to Mr. Baumgartner, plus attorney fees of $176,506.23, interest, and costs. The case was assigned to Shelby County Circuit Court Division VIII, The Honorable D'Army Bailey presiding.

On December 9, 2004, The MED filed its first amended complaint, adding Mr. Baumgartner and Nationwide as defendants. The amended complaint asserted a claim against Mr. Baumgartner and Nationwide for $529,518.70, the approximate total cost of The MED's hospital lien, based on breach of contract and impairment of The MED's hospital lien in violation of the HLA.[3] On April 20, 2005, Nationwide filed a cross-claim against the Baumgartners, seeking indemnity for any liability it might incur to The MED, based on an indemnity provision in the settlement agreement between Nationwide and the Baumgartners. On May 9, 2005, The MED filed a second amended complaint, adding Hartford as a defendant and asserting claims against it for the full amount of the hospital lien as damages for the impairment of its lien.[4]

On June 1, 2005, Nationwide filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law on the undisputed facts. As the premise for its argument, Nationwide asserted that Arkansas law applied to the issues before the court, because the Baumgartners were Arkansas citizens and the accident occurred in Arkansas. Under Arkansas law, Nationwide argued, The MED's hospital lien could not be enforced until the Baumgartners were made whole, pursuant to application of the made-whole doctrine

---

[3] It is not clear from the record why the amount sought in th amended complaint is slightly different from the amount stated in the amended hospital lien.

[4] As against Hartford, The MED sought $530,447.42. Again, the reason for the slight difference between the amount stated on the hospital lien and the amounts claimed as damages in the first and second amended complaints is not apparent from the record.

under Arkansas common law.[5]  Because the Baumgartners were not made whole by the settlement payment, Nationwide contended, The MED's lien was not enforceable. Alternatively, Nationwide claimed that, if the court found that The MED's hospital lien was valid and that Nationwide impaired it, then Nationwide would be entitled to indemnity from the Baumgartners for any amount that Nationwide was obligated to pay to The MED for the impairment of that lien.

On July 20, 2005, the trial court entered an order granting in part and denying in part Nationwide's motion for summary judgment.  The trial court held that Arkansas law was not applicable, because "the contract in this case was done in Tennessee and Tennessee is the proper jurisdiction for this case and . . . Tennessee law should be applied."  It concluded, then, that the made-whole doctrine "has no application in this case."  Therefore, it denied Nationwide's motion insofar as Nationwide claimed that The MED's hospital lien was unenforceable.  However, the trial court granted Nationwide's motion in part by holding that, in the event that The MED was entitled to a judgment against Nationwide for impairment of the hospital lien, then Nationwide would be entitled to a judgment against the Baumgartners under the indemnification provision in the settlement agreement.

Meanwhile, the parties posited to the trial court their various theories on the damages recoverable by The MED under the HLA for impairment of its hospital lien.  The MED asserted in its complaint that it was entitled to recover the entire amount of the reasonable medical services provided to Mr. Baumgartner.  The MED based this argument on Tennessee Code Annotated § 29-22-104(b)(1), which states that, in an action to recover damages for the impairment of a lien, the hospital "may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance."  T.C.A. § 29-22-104(b)(1) (2000).  In this case, that cost totaled approximately $530,000.

Nationwide and Hartford, however, took the position that The MED's damages for impairment of its hospital lien could not exceed one-third of the amount paid to the Baumgartners in settlement.  The defendant insurance companies relied on Section 29-22-101(b) of the HLA, which states that a hospital lien "shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person by judgment, settlement or compromise . . . ."  T.C.A. § 29-22-101(b) (2000).  Thus, Nationwide and Hartford argued that, although Section 29-22-104 permits recovery for reasonable hospital costs, under Section 29-22-101(b), in no case could The MED recover more than the amount

---

[5]The made-whole doctrine is the principle that "an insurer cannot assert a subrogation right until the insured has been fully compensated for his or her injuries."  44A AM. JUR. 2D *Insurance* § 1777 (2003) (footnote omitted).

to which the hospital's lien could apply, limited to one-third of the damages paid to the Baumgartners.

On approximately June 7, 2005, Nationwide filed a motion to amend its answer to challenge the constitutionality of the HLA. Nationwide argued that, if the trial court agreed with The MED's position that Nationwide was liable for the entire amount of the medical services The MED provided to the Baumgartners, then Sections 29-22-101 and 29-22-104 are unconstitutional as applied under the due process clause of the Tennessee and federal constitutions. On June 22, 2005, the Attorney General & Reporter of the State of Tennessee filed a notice with the trial court to intervene to defend against Nationwide's allegation that the HLA was unconstitutional as applied. Subsequently, on June 24, 2005, The MED filed a motion for summary judgment against Nationwide, asserting that Nationwide was liable to The MED for the full amount of reasonable hospital costs pursuant to Section 29-22-104(b)(1). This put the question regarding The MED's damages at issue before the trial court.

On July 1, 2005, the trial court entered an order denying Nationwide's motion to amend its answer to include a constitutional challenge to the HLA based on its conclusion that The MED's interpretation of the statute was incorrect. The trial court held that Section 29-22-104(b)(1) meant that "if an insurer impairs a hospital lien, . . . the damages that can be received by the lienholder [is] the amount that the lienholder would have received if the lien had been complied with by the insurer plus consequential damages and discretionary costs." The order did not directly address The MED's motion for summary judgment against Nationwide, although the trial court's ruling was clearly contrary to The MED's position.

On November 30, 2005, Hartford filed an amended answer. Among other things, Hartford's amended answer asserted as a defense that, "[t]o the extent that the Tennessee Hospital Lien Statute imposes damages that are punitive in nature or disproportionate to the reprehensibility of the defendant's conduct, the statute is unconstitutional." On September 5, 2005, the Attorney General filed another brief in defense of the constitutionality of the HLA.

On December 29, 2005, The MED filed another motion for summary judgment, this one against Hartford, asserting that the undisputed facts established that Hartford impaired The MED's hospital lien. As in the motion for summary judgment against Nationwide, The MED contended that Hartford was jointly liable for the entire amount of the lien pursuant to Section 29-22-104(b)(1). The MED urged the trial court to reconsider its previous holding in the order denying Nationwide leave to amend its answer, to the effect that The MED's damages for impairment of its lien were limited to only one-third of the amount paid to the Baumgartners.

On April 26, 2006, Hartford filed a cross-motion for summary judgment against The MED. It argued that The MED could not recover against Hartford because its lien had not been perfected by sending notice of the lien directly to Hartford as required by Tennessee law. Alternatively, consistent with Nationwide's position, Hartford argued that, even if The Med's lien was valid and it was entitled to recover from Hartford for impairment of its hospital lien, such recovery could not exceed one-third of the payment made to the Baumgartners, pursuant to Section 29-22-101(b), in accordance with the trial court's previous ruling. Furthermore, Hartford claimed that in no event should Hartford be liable to The MED for more than the limits in the policy with Mr. Brewer, $100,000.[6]

In June 2006, the trial court held a hearing on the pending motions. At the hearing, The MED asked the trial court to reconsider its previous ruling that the amount recoverable for impairment of The MED's hospital lien was limited to one-third of the amount paid to the Baumgartners. Convinced that the issue required further consideration, the trial court ordered the parties to submit supplemental briefs on the measure of damages recoverable under the HLA for impairment of a hospital lien, and it invited the Attorney General to brief the issue as well.[7] The trial court scheduled a hearing on all outstanding motions for September 7, 2006.

The hearing was conducted as scheduled on September 7, 2006. On January 8, 2007, before making any determination as to the Defendants' liability, the trial court entered an order reiterating that, as damages for the impairment of its hospital lien, The MED could recover only one-third of the amount obtained by the Baumgartners in settlement with either Nationwide or Hartford. In addition to these damages, the trial court concluded that The MED could recover consequential damages and discretionary costs, and held that consequential damages could include attorney fees and prejudgment interest.

Nearly a year later, on July 13, 2007, the case was transferred from Division VIII to Division V of the Circuit Court, The Honorable Kay S. Robilio presiding.

On April 29, 2008, Judge Robilio conducted a hearing on all of the pending summary judgment motions. At the hearing, consistent with Judge Bailey's previous ruling, Judge Robilio granted The MED's motion for summary judgment against Nationwide for Nationwide's impairment of The MED's hospital lien. Judge Robilio awarded The MED

---

[6] In addition to these arguments, Hartford claimed that the hospital lien was unenforceable because Tennessee lacks the power to impose a lien on Arkansas property. Apparently this argument was not pursued further.

[7] At the hearing, Hartford informed the trial court that the Attorney General's office had indicated an interest in expressing a position on this point by filing a brief or otherwise.

one-third of Nationwide's $25,000 settlement with the Baumgartners, *i.e.*, $8,333.33, plus interest. Judge Robilio reversed Judge Bailey's ruling that attorney fees were recoverable as consequential damages, finding that an award of attorney fees was not permitted pursuant to the statute under these circumstances. As to the cross-motions for summary judgment filed by Hartford and The MED against one another, Judge Robilio asked The MED and Hartford to submit additional authority on their positions.[8]

On July 25, 2008, after considering the supplemental authorities submitted by Hartford and The MED, the trial court entered an order denying Hartford's motion for summary judgment against The MED and granting in part The MED's motion for summary judgment against Hartford. Judge Robilio concluded that Hartford had constructive notice of the hospital lien, and that The MED did "not have the responsibility to investigate the identity of potentially liable third parties. A sophisticated party such as Hartford has the burden of discovery of a pending hospital lien." Therefore, the trial court found that Hartford's $100,000 payment to the Baumgartners constituted an impairment of The MED's hospital lien. As damages, Judge Robilio awarded The MED $100,000, the full amount of Hartford's settlement with the Baumgartners. She explained that "it would be against public policy to grant the full amount of the hospital lien; therefore, Hartford is liable . . . only in the amount of its policy limit." Both The MED and Hartford filed notices of appeal from the trial court's decision.

**After Filing of Notices of Appeal**

After the notices of appeal were filed, but before the appellate briefs were filed, this Court issued its decision in another case with somewhat similar facts and even some of the same parties. In ***Shelby County Health Care Corp. v. Nationwide Mutual Insurance Co.***, No. W2008-01922-COA-R3-CV, 2009 WL 302261 (Tenn. Ct. App. Feb. 6, 2009) ("***Nationwide***"), a patient was treated at The MED for injuries sustained in a one-car automobile accident in Arkansas. He incurred approximately $33,823 in medical bills while at The MED. ***Nationwide***, 2009 WL 302261, at *1. The patient had an automobile insurance

---

[8]Although the claims by The MED and the Defendant insurance companies against the Baumgartners are not at issue in this appeal, we note that, at the April 29, 2008 hearing, Judge Robilio granted The MED's motion for summary judgment against the Baumgartners for the full amount of Mr. Baumgartner's hospital bill and denied Mrs. Baumgartner's motion for summary judgment against The MED. Judge Robilio also granted Hartford summary judgment against the Baumgartners for any amount recovered by The MED from Hartford in the underlying lawsuit based on the indemnification provision in the settlement agreement between Hartford and the Baumgartners. As to Nationwide, Judge Bailey had previously ruled that Nationwide was entitled to indemnification from the Baumgartners pursuant to their settlement agreement. On July 1, 2008, Judge Robilio entered an order consistent with her oral rulings. However, on June 30, 2008, the day before this order was entered, the Baumgartners filed a petition in bankruptcy, which stayed proceedings against them.

policy with Nationwide, and the coverage under the policy included medical payment benefits of up to $5,000. After The MED filed a valid hospital lien for the $33,000 in services provided to the patient, Nationwide paid the $5,000 policy limit in medical benefits to medical care providers other than The MED who rendered services to the patient after the accident.[9] *Id.* The MED sued Nationwide for impairment of its hospital lien and sought damages in the total amount of the lien. The trial court held in favor of The MED, but awarded damages of only $5,000, the amount of the medical coverage under the automobile insurance policy. The MED appealed. *Id.*

On appeal, the intermediate appellate court in *Nationwide* affirmed the trial court's conclusion that Nationwide had impaired The MED's hospital lien. However, it modified the award to $33,823, the total amount of the medical services provided by The MED. *Id.* at *4. In doing so, the Court first found that the hospital lien statute was applicable to contractual medical payments arising out of insurance coverage, relying on the holding in *University of Tennessee v. Prudential Insurance Co.*, No. 03A01-9611-CV-00345, 1997 WL 119582 (Tenn. Ct. App. Mar. 18, 1997) ("*Prudential*").

The intermediate appellate court in *Nationwide* then addressed the damages recoverable by The MED for Nationwide's impairment of the hospital lien. As in the instant case, The MED claimed that it was entitled to the full amount of the medical services provided to the patient, pursuant to Section 29-22-104(b)(1). Also as in the instant case, Nationwide argued that The MED's recovery was limited to one-third of the amount paid to the patient pursuant to Section 29-22-101(b). The Court held that Nationwide was liable to The MED for the full amount of the medical services provided by The MED to the patient, citing *Prudential*, as well as an Alabama decision. *Nationwide*, 2009 WL 302261, at *4 (citing *Prudential*, 1997 WL 119582, at *3, and *Progressive Specialty Ins. Co. v. Univ. of Ala. Hosp.*, 953 So. 2d 413 (Ala. Civ. App. 2006) (awarding the full amount of the lien)).

After oral argument on the appeal in the case at bar, the Tennessee Supreme Court granted permission for Nationwide's appeal of the intermediate appellate court's decision in *Nationwide*. In light of the fact that the intermediate appellate court's decision in *Nationwide* regarding damages was directly applicable to the issues in the instant case, we held this case in abeyance pending the Supreme Court's disposition of the appeal in *Nationwide*.

On October 13, 2010, the Supreme Court handed down its decision in *Nationwide*, reversing the intermediate appellate court's decision and overruling *Prudential*. The Supreme Court

---

[9]A payment of $1,290 was made to an ambulance service, and $3,710 was paid to the Arkansas hospital that first treated the patient.

held that the HLA does not apply to payments made pursuant to the medical benefits provision of the patient's automobile insurance policy. *Nationwide*, 325 S.W.3d 88, 97-98 (Tenn. 2010). In light of this holding, the *Nationwide* Court did not reach the issue of whether The MED's lien was impaired by Nationwide, nor did it address the amount of damages that would have been recoverable by The MED for any impairment of the hospital lien. *Id.* at 98.

After *Nationwide* was decided, the parties in the instant case sought, and were granted, permission to submit supplemental briefs on the application of the holding in *Nationwide* to the facts of this case. After careful consideration of the parties' supplemental briefs, we now address the issues presented in this appeal.

## ISSUES PRESENTED AND STANDARD OF REVIEW

Hartford, Nationwide, and The MED all challenge the trial court's decision.[10] Hartford argues that the trial court erred in holding that it was liable for impairment of The MED's lien despite the fact that The MED did not give Hartford direct notice of the hospital lien and thus did not perfect the lien. Alternatively, Hartford argues that, even if it is found that the lien was perfected and that Hartford impaired the lien, the trial court erred in granting The MED damages in the amount of Hartford's policy limits of $100,000, an amount in excess of one-third of the monies Hartford paid to the Baumgartners ($33,333.33). Hartford argues that in no event should The MED be awarded the full amount of its hospital lien, as such a holding would result in a windfall to The MED and would implicate Hartford's due process rights.

Nationwide's position on appeal is generally aligned with that of Hartford, but it raises somewhat different issues. Nationwide first argues that the trial court erred in declining to apply the made-whole doctrine under Arkansas law in determining whether The MED's lien is enforceable.[11] Alternatively, Nationwide argues that the trial court's judgment against

_____

[10]Hartford and The MED filed notices of appeal, but Nationwide did not. Nevertheless, Nationwide sought to preserve for appeal its argument that the made-whole doctrine should have applied in this case.

[11]Nationwide also argues that The MED should be judicially estopped from asserting that it is entitled to recover the full amount of its lien, based on the position taken by The MED in an unrelated hospital lien case. In *Spivey v. Anderson*, No. 02A01-9704-CV-00075, 1997 WL 563199 (Tenn. Ct. App. Sept. 9, 1997), it was noted by the appellate court that "[t]he Med does not dispute that it is entitled to only one-third of the $50,000.00 settlement in this case" for the impairment of its lien. *Spivey*, 1997 WL 563199, at *5. Because *Spivey* involved the enforcement of a hospital lien, not the impairment of a lien, it is not applicable here, and Nationwide's judicial estoppel argument is without merit. In its reply brief, The MED requests an award of

(continued...)

Nationwide in the amount of $8,333 should be affirmed, because The MED's recovery for the impairment of the lien must be limited to one-third of the amount of Nationwide's payment to the Baumgartners. Like Hartford, Nationwide asserts that in no event should The MED recover more than Nationwide's policy limits. Nationwide maintains that allowing The MED to recover the full amount of its lien would be contrary to the legislative intent and legislative history of the HLA, as well as current case law, and it would result in unjust enrichment to The MED. Similar to Hartford, Nationwide argues that permitting the recovery of the full amount of The MED's lien would be so excessive as to be unconstitutional.

The MED argues that the trial court was correct in holding that its lien was perfected as to both Hartford and Nationwide. It argues, however, that the trial court erred in declining to hold both Hartford and Nationwide jointly responsible for the full cost of the medical services provided by The MED, pursuant to Section 29-22-104(b)(1). The MED insists that this interpretation of the relevant statutes does not implicate the substantive due process rights of either Hartford or Nationwide.

Tennessee's Attorney General filed an appellate brief in defense of the constitutionality of the HLA. The Attorney General asserts that the Act is constitutional on its face, because the damages provision in Section 29-22-104(b)(1) is not mandatory, but rather gives the trial court discretion to award a hospital whose lien has been impaired an amount of damages commensurate with the equities in the given case. The Attorney General also argues that, even if The MED were allowed to recover the full cost of the medical services provided to Mr. Baumgartner in this case, such a decision would be a constitutional application of the statute.

A trial court's grant of summary judgment is reviewed *de novo* with no presumption of correctness. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). To determine whether a grant of summary judgment is appropriate, we must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. **Warren**, 954 S.W.2d at 723 (quoting **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material

___

[11](...continued)
attorney fees incurred in responding to this argument. This request is respectfully denied.

-11-

fact exist, the non-moving party must demonstrate, by affidavits or otherwise, that a disputed issue of material fact exists for trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

Decisions regarding the interpretation of a statute are conclusions of law, which are reviewed *de novo*, with no presumption of correctness. *Sullivan ex rel. Hightower v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004) (citing *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003)). In *Nationwide*, the Supreme Court capsulized the applicable tenets of statutory construction:

> [W]hen interpreting a statute, we "must first ascertain and then give full effect to the General Assembly's intent and purpose" in drafting those sections. *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). We presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). When the statutory language is clear and unambiguous, we simply apply its plain meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

*Nationwide*, 325 S.W.3d at 92; *see also Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009).

Constitutional interpretation also presents questions of law, which we review *de novo*, affording no presumption of correctness to the trial court's interpretation. *Waters*, 291 S.W.3d at 882.

## ANALYSIS

### Overview of Hospital Lien Act

Tennessee's HLA was adopted in 1970 in order "to create for hospitals a lien upon all causes of action for damages accruing to persons having received care and treatment for illness or injuries and to provide the procedure for the perfecting, recording, enforcement and release of such lien." *Nationwide*, 325 S.W.3d at 92-93 (quoting 1970 Tenn. Pub. Acts 529). The

purpose of the HLA is to ensure that hospital bills are paid and, in turn, to keep hospital costs down:

> In enacting this legislation, the legislature indicated that the purpose of this Act is to create liens for hospitals to ensure that hospital bills are paid. The legislature recognized that hospitals were losing funds from providing care to individuals who later collected a settlement or judgment for their injuries but failed to pay their hospital bills. The legislature noted that this Act would help keep hospital costs down by setting up an orderly method for the establishment of liens on such settlements or judgments.

*Id.* at 93 (quoting Tenn. Att'y Gen. Op. No. 94-067 (May 13, 1994) (citations omitted)); *see Martino v. Dyer*, No. M1999-02397-COA-R3-CV, 2000 WL 1727778, at *2 (Tenn. Ct. App. Nov. 22, 2000). Similar to hospital lien laws in other states, the Tennessee HLA embraces "the very humane purpose of encouraging physicians, hospitals and nurses to extend their services and facilities to indigent persons who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities." *Nationwide*, 325 S.W.3d at 93 (quoting *Buchanan v. Beirne Lumber Co.*, 124 S.W.2d 813, 815 (Ark. 1939)); *see also Cmty. Hosp. v. Carlisle*, 648 N.E.2d 363, 365 (Ind. Ct. App. 1995) ("By allowing health care providers direct interests in funds collected by personal injury patients, the statute furthers the important policy of reducing the amount of litigation . . . otherwise . . . necessary to secure repayment of the health care debts."); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985) (observing that a hospital lien statute is to provide an additional method of securing payment for medical services, thus ensuring the prompt and adequate treatment for accident victims).[12]

Tennessee Code Annotated § 29-22-101(a) sets forth who may file a hospital lien and the parameters of such a lien:

> (a) Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien for all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care,

---

[12] The legislative history indicates that hospitals were given the right to file a statutory lien because "a hospital under the law must take a patient that comes in an emergency. The hospital is not able to choose whether or not they will expend services and give medicines to this person that requires immediate attention." Statement of Sen. Farris, Senate Session, Feb. 11, 1970.

treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of such person's death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

T.C.A. § 29-22-101(a). Thus, the hospital's lien may be for "all reasonable and necessary charges" for a patient's care and treatment. As noted above, Section 29-22-101(b) limits the extent to which a hospital lien may apply:

(b) The hospital lien, however, *shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person by judgment, settlement or compromise* rendered or entered into by such person or such person's legal representative by virtue of the cause of action accruing thereto.

T.C.A. § 29-22-101(b) (emphasis added).

Section 29-22-104 of the HLA is captioned, "Impairment; damages." The pertinent subsection of this provision states:

(b)(1) Any acceptance of a release or satisfaction of any such cause of action, suit, claim, counterclaim, demand or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in this chapter shall prima facie constitute an impairment of such lien, and *the lienholder shall be entitled to an action at law for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance.*

T.C.A. § 29-22-104(b)(1) (emphasis added). Thus, this section addresses what constitutes impairment of a hospital lien and the damages recoverable for such impairment.

Against this backdrop, then, we first address the issues on appeal regarding whether The MED's lien was impaired. If impairment is found, we will then address the damages recoverable for such impairment.

## Impairment of Hospital Lien

### *Notice*

We first address Hartford's argument that the trial court erred in concluding that The MED's hospital lien was perfected as to Hartford. Section 29-22-102 sets out the requirements for perfecting a hospital lien:

> (a) *In order to perfect such lien, the agent or operator of the hospital*, before or within one hundred twenty (120) days after any such person shall have been discharged therefrom, *shall file* in the office of the clerk of the circuit court of the county in which the hospital is located, and in the county wherein the patient resides, if a resident of this state, *a verified statement in writing setting forth the name and address of* the patient as it appears on the records of the hospital, and the name and address of the operator thereof, the dates of admission and discharge of the patient therefrom, the amount claimed to be due for such hospital care, and *to the best of the claimant's knowledge, the names and addresses of persons, firms or corporations claimed by such ill or injured person* or by such person's legal representative, *to be liable for damages arising from such illness or injuries*.

> (b) *A copy of the claim shall, within ten (10) days from the filing thereof be sent by registered mail, postage prepaid, to each person, firm or corporation so claimed to be liable on account of such illness or injuries*, at the address given in the statement, and to the attorney, or attorneys, representing the person to whom services were rendered by the hospital if such attorney, or attorneys, are known to the claimant or could, with reasonable diligence, be known to the claimant.

> (c) *The filing of the claim shall be notice thereof to all persons, firms or corporations who may be liable on account of such illness or injuries, whether or not they are named in the claim or lien and whether or not a copy of the claim shall have been received by them*.

T.C.A. § 29-22-102(a) - (c) (2000) (emphasis added).[13]

---

[13] Although a lien may be perfected within 120 days after the patient has been discharged, an insurance company that makes payments to a patient thirty days or more after the patient's discharge will not incur additional liability from a subsequently filed hospital lien. *See* T.C.A. § 29-22-102(e).

In this case, The MED filed its lien with the Shelby County Circuit Court Clerk's Office, listed the required information, and sent a copy of the lien to the Baumgartners. Hartford was not sent a copy of the lien notice. The MED did not have actual notice of Hartford's involvement, and Hartford did not have actual notice of The MED's hospital lien. The trial court held that Hartford had constructive notice of the hospital lien, commenting that The MED did "not have the responsibility to investigate the identity of potentially liable third parties. A sophisticated party such as Hartford has the burden of discovery of a pending hospital lien." On appeal, Hartford argues that, despite not having actual notice of Hartford's involvement, The MED was required to specifically include Hartford and Hartford's address in the lien filings and mail it a copy of the hospital lien in order to perfect its lien. Hartford notes that The MED knew that Mr. Baumgartner had been hit by another driver. Because Section 29-22-102 requires the hospital to use "the best of [its] knowledge" in naming potentially liable persons or entities in the lien filings, Hartford argues from this language that The MED had a duty to use "reasonable diligence" or "best efforts" to discover the identity of the other driver and the other driver's insurance company, namely, Hartford. In this case, Hartford claims, The MED could have easily obtained such information by simply asking the Baumgartners about the driver of the other car or by reviewing the Arkansas highway patrol report. Because it did not do so, Hartford argues, The MED did not perfect its lien as to Hartford, and its lien is unenforceable as to Hartford.

Hartford further contends that the trial court's finding that Hartford had "constructive notice" based on subsection (c) of Section 29-22-102 ignored The MED's obligations under subsections (a) and (b) of the statute to use reasonable diligence to identify persons claimed to be legally liable for the patient's injuries and to include those persons' names and addresses on the lien statement. Reading all of the subsections of Section 29-22-102 *in pari materia*, Hartford claims, the hospital must give the best notice practicable under subsections (a) and (b) before subsection (c)'s "notice . . . to all persons" provision is effective. The MED's failure to do so in this instance, Hartford argues, is fatal to its claim against Hartford.

In response, The MED argues that the language of Section 29-22-102 is plain and unambiguous, and that the trial court interpreted it correctly. The MED contends that Hartford confuses the statutory requirements for perfection of the hospital lien with those for notice. The MED claims that, under Section 29-22-102, the hospital lien is perfected once the requirements of subsections (a) and (b) are satisfied, and those subsections do not impose a burden on the hospital to take active steps to ascertain third parties who may be potentially liable. Rather, The MED argues, the "best knowledge" referred to in subsection (a) is the actual knowledge of the hospital at the time the lien is filed. Notice, however, is accomplished at the time the lien is filed, and under subsection (c), such notice is effective as "to all persons, . . . whether or not they are named in the claim or lien and whether or not a copy of the claim shall have been received by them." T.C.A. § 29-22-102(c). The MED

asserts that its lien met all of the statutory requirements for perfection and was perfected as to Hartford. Therefore, as held by the trial court, Hartford is deemed to have constructive notice of The MED's lien under Section 29-22-102(c).

"Tennessee's courts have generally required strict compliance with the lien statutes." *Holston Valley Hosp. & Med. Ctr. v. Moffitt*, No. 03A01-9608-CV-00271, 1997 WL 147530, at *2 (Tenn. Ct. App. Mar. 31, 1997) (quoting *D.T. McCall & Sons v. Seagraves*, 796 S.W.2d 457, 460 (Tenn. Ct. App. 1990)); *see Vulcan Materials Co. v. Gamble Constr. Co.*, 56 S.W.3d 571, 573 (Tenn. Ct. App. 2001). Strict compliance is required because liens are wholly statutory and, therefore, "it is beyond the power of [the] court to waive its provisions or substitute others." *Holston Valley*, 1997 WL 147530, at *2; *see Nationwide*, 325 S.W.3d at 93 ("A lien created by statute is limited in operation and effect by its terms and can be enforced only in the circumstances provided for in the legislation."). Therefore, if The MED failed to perfect its lien in accordance with subsections (a) and (b) of Section 29-22-102, this would be fatal to its claims against Hartford under the lien. *Holston*, 1997 WL 147530, at *3 (concluding that the hospital's failure to send a copy of the lien to the patient's attorney pursuant to subsection (b) was fatal to the hospital's claim under the hospital lien).

Subsection (a) of Section 29-22-102 requires the hospital to, among other things, set forth in its verified statement the names and addresses of (1) the patient as it appears on the hospital records, (2) the operator of the hospital, and (3) persons, firms, or corporations who "to the best of the claimant's knowledge" are "claimed by such ill or injured person . . . to be liable for damages arising from such illness or injuries." T.C.A. § 29-22-102(a). Subsection (b) of the statute in turn requires the hospital to send by registered mail a copy of the lien claim to each person, firm, or corporation "so claimed to be liable" in the verified statement, as well as to the patient's attorney, if the attorney is known or "with reasonable diligence" could be known to the hospital. T.C.A. § 29-22-102(b).

Hartford essentially argues in this case that the phrase "the best of the claimant's knowledge" in Section 29-22-102(a) includes "reasonable diligence" or "best efforts" to find information beyond the claimant's actual knowledge. Although Hartford cites no Tennessee authority in support of its position, it cites caselaw from other jurisdictions, including *Board of Trustees of Clark Mem. Hosp. v. Collins*, 665 N.E.2d 952, 956 n.1 (Ind. Ct. App. 1996). We have carefully reviewed these authorities and respectfully conclude that they are either inapplicable or not persuasive.[14] We find no language in subsection (a) that appears to place

---

[14]Hartford cites the Indiana case for the proposition that a hospital must employ "reasonable diligence" or "best efforts" in discovering the identity of any potential tortfeasors so that they may have notice in order

(continued...)

-17-

a burden on the hospital to engage in fact-finding efforts to ascertain the identity of persons or corporations who may be liable for the patient's injuries. Subsection (b) refers to "reasonable diligence," but only in connection with the name and address of the patient's attorney, in order to send him a copy of the lien. Moreover, the provision in subsection (c) that the filing of the lien is constructive notice to "all persons" indicates the legislature's intent to require a person or entity who settles with the patient for his injuries to check the relevant courthouse for a lien before paying the settlement monies to the patient.

From our review of the language of the statute, construing all of the subsections *in pari materia*, we must conclude that the phrase "the best of the claimant's knowledge" in subsection (a) refers to the hospital's actual knowledge at the time the lien is filed. Thus, we agree with the trial court's holding that The MED did not have a duty under Section 29-22-102 to conduct an inquiry into the identity of potential third-party tortfeasors in order to perfect its hospital lien. Hartford raises no other challenges on appeal to the trial court's finding that it impaired The MED's hospital lien.

### *Made-Whole Doctrine*

Nationwide argues on appeal that Arkansas law should apply to the issues in this case, because this case arose out of an automobile accident that occurred in Arkansas. As Arkansas has adopted the "made-whole" doctrine, Nationwide contends, The MED's hospital lien did not arise, *i.e.*, did not become effective, until the Baumgartners had been made whole by the insurance settlement payments made to them. ***See S. Centr. Ark. Elec. Coop. v. Buck***, 117 S.W.3d 591, 595-96 (Ark. 2003).

In response, The MED argues that Tennessee law controls, because the injured party was treated in Tennessee by a Tennessee hospital, his hospital debt was incurred in Tennessee, and the hospital lien was filed in Tennessee. Moreover, The MED argues, the made-whole doctrine has been adopted in Tennessee as well. The MED notes, however, that the made-whole doctrine applies only to situations involving an insurer's claim to subrogation, where the insurer asserts a right to proceeds recovered by the insured from a third-party tortfeasor. It insists that the made-whole doctrine does not apply to a hospital lien. Therefore, regardless

---

[14](...continued)
to perfect a hospital lien. ***See Board of Trustees of Clark Mem. Hosp. v. Collins***, 665 N.E.2d 952, 956 n.1 (Ind. Ct. App. 1996). However, there is no indication in the ***Collins*** opinion that the Indiana statutes at issue were similar to those in Tennessee, and the Indiana statutes at issue have since been repealed. Cases from other jurisdictions can be persuasive authority on the proper interpretation of a Tennessee statute, but generally, to be persuasive authority, it must appear that the other jurisdiction was applying or interpreting a statute similar to the Tennessee statute at issue in pertinent part.

of whether Arkansas or Tennessee law is applied, The MED claims, the "made-whole" doctrine is inapplicable to this case.

Generally, when faced with an issue involving choice of law, the court must first determine whether there is, in fact, a conflict of laws. *See Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992); *see also Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at \*29 (Tenn. Ct. App. June 29, 2007) (stating that determining whether a conflict exists precedes a determination of which state's law applies). It is unnecessary to apply choice of law rules if the relevant laws do not conflict. *See Bloodworth*, 2007 WL 1966022, at \*29.

Here, both Arkansas and Tennessee apply the classic formulation of the made-whole doctrine, that is, the principle that "an insurer cannot assert a subrogation right until the insured has been fully compensated for his or her injuries." 44A AM. JUR. 2d *Insurance* § 1777 (2003) (footnote omitted); *see Franklin v. Healthsource of Ark.*, 942 S.W.2d 837, 839-40 (Ark. 1997); *York v. Sevier County Ambulance Auth.*, 8 S.W.3d 616, 619-21 (Tenn. 1999); *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650-51 (Tenn. 1999).

In this case, Nationwide asks us to apply the made-whole doctrine as employed in *South Central Arkansas Electric Company v. Buck*, *supra*. In *Buck*, the made-whole doctrine was applied in the context of a worker's compensation subrogation claim.

Regardless of the variation on the made-whole doctrine urged by Nationwide, we find that the doctrine has no application in this case. The MED is not the Baumgartners' insurer, and The MED is not seeking recovery pursuant to any subrogation rights; rather, it is simply a creditor of the Baumgartners with a statutory lien enforceable against any recovery received by the Baumgartners from a third party. The MED's claim against Nationwide arises from the provision in Tennessee's HLA which specifically grants The MED a cause of action based on the impairment of its statutory hospital lien. Nationwide cites no authority applying the made-whole doctrine under such circumstances, and we have found none. Therefore, we find that the made-whole doctrine, as that doctrine has been applied in either Arkansas or Tennessee, is not applicable to this case, and reject Nationwide's argument that The MED's hospital lien did not arise until the Baumgartners were made whole.

Accordingly, we affirm the trial court's finding that the payments made by Hartford and Nationwide to the Baumgartners in settlement of their claims constituted impairment of The MED's properly perfected hospital lien.

**Damages Recoverable for Impairment of Hospital Lien**

We now turn to the issue of damages. As it argued to the trial court, The MED contends on appeal that Hartford and Nationwide are jointly and severally liable for the full amount of Mr. Baumgartner's medical expenses as damages for impairment of the hospital's lien. The MED bases this argument on Section 29-22-104(b)(1), which states that, if a lien is impaired, the lienholder "*may recover . . . the reasonable cost of such hospital care, treatment and maintenance.*" The MED relies on the interpretation of that statute by the intermediate appellate court in **Nationwide** and in **Prudential**. The MED acknowledges, of course, that **Prudential** was overruled by the Supreme Court, and that the intermediate appellate court's decision in **Nationwide** was reversed. It points out, however, that the Supreme Court's opinion in **Nationwide** was narrowly tailored to a different issue, and that the Supreme Court did not address the issues presented in the instant case. Therefore, it claims, the intermediate appellate court's interpretation of Section 29-22-104(b)(1) in **Nationwide** remains valid, as does the interpretation of that statute in **Prudential**.

In response, both Nationwide and Hartford argue that the Supreme Court's decision in **Nationwide** eliminates any authority whatsoever for The MED's argument, because **Prudential** was overruled, and the intermediate appellate court's decision in **Nationwide** was reversed. They speak in sweeping terms, contending that the Supreme Court decision "nullified" both **Prudential** and the **Nationwide** intermediate court's opinion, and that it left The MED with "no Tennessee case law" supporting its position. Furthermore, Hartford claims that the Supreme Court's decision in **Nationwide** bolsters its position that Section 29-22-101(b), limiting the application of a hospital lien to "one third (1/3) of the damages obtained or recovered," must be read in conjunction with Section 29-22-104(b)(1), and that The MED's recovery for the impairment of its hospital lien should be limited to one-third of the amount paid to the Baumgartners.[15]

Both Hartford and Nationwide argue in the alternative that, should this Court find that The MED's damages are not limited by Section 29-22-101(b), then in no event should The MED's recovery exceed the Defendant insurance companies' respective policy limits as set forth in their insurance contracts with their insureds. At no time, they argue, did they contract to be liable for more than the policy limits. Interpreting Section 29-22-104(b)(1) so as to permit The MED to recover from them the full amount of Mr. Baumgartner's medical expenses — an amount well beyond the policy limits — would be excessive, overly punitive, and disproportionate to the actual damages related to the impairment of the lien. Such an application, they argue, would render that statute unconstitutional as applied.

---

[15]While Hartford seeks a reversal on this basis, Nationwide simply argues that the judgment against it for one-third of the amount paid to the Baumgartners should be affirmed.

We examine first the precedential value of the intermediate appellate court opinions in *Prudential* and *Nationwide*, which were overruled and reversed, respectively, by our Supreme Court. As indicated above, the facts in *Nationwide* involved payments to medical providers other than the plaintiff hospital (The MED), pursuant to a medical benefits provision in the patient's automobile insurance policy. The Supreme Court viewed the pivotal issue to be whether a hospital lien would apply to medical benefit payments from the patient's insurance policy, which required the Court to construe Section 29-22-101. *Nationwide*, 325 S.W.3d at 98. Ultimately, the Supreme Court concluded that a statutory hospital lien does not extend to payments made pursuant to the medical payment benefits provision of the patient's insurance policy.[16] *Id.* In its opinion, the Supreme Court discussed *Prudential* and, of course, the intermediate appellate court's opinion in *Nationwide*, but it did not address the issue presented here, namely, the damages recoverable by The MED for impairment of its lien. The Court stated specifically that, based on its disposition of the case, "it is not necessary to address whether the Med's lien was impaired by Nationwide." *Id.* Because the Court found it unnecessary to address whether the lien was impaired, it did not address the damages recoverable for such impairment.

We agree that the Supreme Court's decision in *Nationwide* nullified the intermediate appellate court's holding, as well as the same holding in *Prudential*, that the HLA applies to payments made to the patient pursuant to the medical benefits provision of the patient's automobile insurance policy under the circumstances of that case. *See* 5 C.J.S. *Appeal and Error* § 1106 (2010) ("The effect of a general and unqualified reversal of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court." (Footnotes omitted)). In light of the limited scope of the Supreme Court's decision, however, we conclude that it did not have the effect of completely nullifying the appellate decisions in *Prudential* and *Nationwide* but rather left the decisions intact insofar as the Court in both cases addressed the issue of damages. Nevertheless, the intermediate appellate court decisions in both *Prudential* and *Nationwide* are unpublished opinions. As such, under Rule

---

[16]In the instant case, the payments at issue were made pursuant to the tortfeasor's insurance policy (Hartford) and the uninsured motorist provision of the Baumgartners' automobile insurance policy (Nationwide). Therefore, it is apparent that the payments constituted "damages obtained or recovered . . . by . . . settlement . . . by virtue of the cause of action accruing" to the Baumgartners. T.C.A. § 29-22-101(b). No issue has been raised on appeal by Hartford or Nationwide, either before or after the Supreme Court issued its *Nationwide* opinion, as to whether The MED's hospital lien applied to the payments made to the Baumgartners, except the issues addressed above relating to notice to Hartford and application of the made-whole doctrine.

4(G)(1) of the Tennessee Supreme Court Rules,[17] they are considered persuasive but not controlling authority on the issues not addressed by the Supreme Court in *Nationwide*. Moreover, after reviewing the analysis by the Supreme Court in *Nationwide*, as explained below, we deem it prudent to revisit the interpretation of Section 29-22-104(b)(1) adopted by the intermediate appellate courts in *Prudential* and *Nationwide*.

The gist of Section 29-22-104(b)(1) is to establish a right of action for a hospital whose properly perfected hospital lien has been impaired. It states that the hospital "shall be entitled to an action at law for damages on account of such impairment, and in such action may recover from one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance." T.C.A. § 29-22-104(b)(1). The hospital's statutory right of action is against any person or entity "making such settlement" in impairment of the hospital's lien, and thus arises out of the payor's action of making a settlement payment in contravention of the lien, without reference to whether the payor's reason for making the settlement payment arose from contract or otherwise. This is important in considering the argument of Hartford and Nationwide that their policy limits should be the outside limit of their liability, because that is all they contracted to pay. In light of the nature of their liability under this statute, we find that the insurance policy limits are not relevant to the damages recoverable by The MED for impairment of its lien.

Hartford and Nationwide correctly note that, in its *Nationwide* decision, the Supreme Court took pains to interpret Section 29-22-101(a) *in pari materia* with other provisions of the HLA, namely, subsection (b) of that same statute. In *Nationwide*, the Supreme Court initially observed that the language in Section 29-22-101(a), describing the types of things to which a hospital lien may be applied, is quite broad. This was narrowed substantially by the Court's consideration of the language in subsection (b). *See Nationwide*, 325 S.W.3d at 97. The Supreme Court considered these subsections *in pari maria* despite the fact that the *Nationwide* case involved a claim for *impairment* of a hospital lien, and subsection (b) pertains to the *enforcement* of a hospital lien. The MED argues in this appeal that subsection (b) should not be considered as relevant to our inquiry because this case involves the impairment of a lien, not the enforcement of a lien. Indeed, this argument was adopted by the *Prudential* court and by the intermediate appellate court in *Nationwide* in reliance on the *Prudential* decision. *See Nationwide*, 2009 WL 302261, at *3 (citing *Prudential*, 1997 WL

---

[17]Tennessee Supreme Court Rule 4(G)(1) states in pertinent part: "An unpublished opinion shall be considered controlling authority between the parties to the case. . . . Unless designated 'Not For Citation,' 'DCRO' or 'DNP' pursuant to subsection (F) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority." Although the distinction between "published" and "unpublished" decisions seems of greatly diminished value in an age when both published and unpublished opinions are equally accessible through online legal research, which is now the primary mode of legal research, we, of course, defer to Rule 4(G)(1) as a duly adopted rule of our Supreme Court.

119582, at *2). We agree with The MED that Section 29-22-101(b) is not directly applicable to a case involving the impairment of a lien. However, compartmentalizing Sections 29-22-101(b) and 104(b)(1) as urged by The Med would be contrary to the Supreme Court's analysis in *Nationwide*.

Examining the interplay between Section 29-22-104(b)(1) and Section 29-22-101, we observe that these provisions of the HLA refer specifically to two different financial amounts. Sections 29-22-101(a) and 104(b)(1) refer to the "reasonable charges" or the "reasonable cost" of the hospital care and treatment.[18] Section 29-22-101(b) states that the hospital lien "shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person." In this case, the amount of damages paid by Hartford and Nationwide to the Baumgartners, a total of $125,000, was far less than the approximately $530,000 in the reasonable cost of medical care provided by The MED for Mr. Baumgartner.[19] However, the cost of the medical services may not always exceed the damages paid.[20] The ill or injured person may receive a payment, from an insurance company or otherwise, that exceeds the reasonable cost of his medical care where, for example, he receives a payment to settle a claim for pain and suffering or other damages.[21] Conceivably, "one third (1/3) of the damages obtained or recovered" could exceed "the reasonable cost of [the] hospital care." T.C.A. §§ 29-22-101(b) and 104(b)(1). Therefore, the "damages obtained" under Section 29-22-101(b), or the "settlement" made in impairment of the lien under Section 29-22-104(b)(1), may be more, or may be less, than the reasonable cost of the medical care, depending on the circumstances.

---

[18]Section 29-22-101(a) states that the hospital shall have a lien "for all reasonable and necessary charges for hospital care, treatment and maintenance." Section 29-22-104(b)(1) states that, as damages for impairment, the lienholder may recover "the reasonable cost of such hospital care, treatment and maintenance." For purposes of this Opinion, we will view the "reasonable and necessary charges" as essentially the same as the "reasonable cost" of the hospital care, treatment, and maintenance of the patient at issue.

[19]There has been no allegation that the amount of The MED's hospital lien did not represent the "reasonable cost" of Mr. Baumgartner's medical care.

[20]In *Prudential*, the patient incurred hospital medical care in the amount of $5,060.76, and the defendant insurance company paid this same amount to the patient, without making any payment to the hospital, despite being aware of the hospital's lien. *Prudential*, 1997 WL 119582, at *1. In *Nationwide*, the patient incurred medical expenses at The MED totaling $33,823.02, and the defendant Nationwide insurance company paid a total of $5,000 without making any payment to The MED. *Nationwide*, 325 S.W.3d at 91.

[21]In the legislative history, the Senate sponsor of the bill described to the Senate the provision giving the hospital a lien as to "the recovery amount" in a settlement, and observed: "As you know, recoveries are made for various things including pain and suffering, certain amounts called specials to lawyers which includes hospital costs and other costs such as doctor's bills." Statement of Sen. Farris, Senate Session, Feb. 11, 1970.

-23-

We construe Section 29-22-104(b)(1) against this background. Although The MED focuses on the portion of the statute describing the extent of damages that may be available, it is important to first define what the statute grants. The statutory language granting a right of action to the lienholder for impairment of its lien states that "the lienholder shall be entitled to an action at law *for damages on account of such impairment* . . . ." The definition of "damages" quoted in *Nationwide* is "pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury . . . through the unlawful act or omission or negligence of another." *Nationwide*, 325 S.W.3d at 97 (quoting BLACK'S LAW DICTIONARY 389 (6TH ed. 1990)). Under this definition, the pecuniary compensation is linked to the unlawful act of another. The goal of a damages award has been described:

> The stated goal of the damages remedy is compensation of the plaintiff for legally recognized losses. This means that the plaintiff should be fully indemnified for his loss, but that he should not recover any windfall. Stated in this way, damages is an instrument of corrective justice, an effort to put the plaintiff in his or her rightful position.

DAN B. DOBBS, DOBBS HORNBOOK ON REMEDIES § 3.1 (2d ed. 1993) (subsection on *Compensatory and Non-compensatory Goals*). With damages, as with any remedy, the award should be "congruent with" the plaintiff's rights. *Id.* at § 1.7 (subsection on *Rights and Remedies*). Therefore, to formulate the appropriate award of damages, we "must know the nature and scope of the underlying right." *Id.*

What then is "the nature and scope of" The MED's underlying right? Had Hartford and Nationwide honored The MED's lien as required, under Section 29-22-101(b) of the HLA, The MED would have received one-third of the settlement monies paid to the Baumgartners.[22] Even though Section 29-22-101(b) does not *apply* to an action for impairment, we find that it circumscribes the "scope of [The MED's] underlying right." *Id.*

The MED argues that its underlying right should be measured by Section 29-22-101(a), which gives the hospital a statutory lien "for all reasonable and necessary charges for hospital care, treatment and maintenance." The remedy for impairment of its lien, The MED asserts, is set forth in Section 29-22-104(b), which states that, in an action at law for impairment of

---

[22]The legislative history reflects that this was the legislature's intent. In explaining that a settlement with a patient would not require the approval of the hospital holding a lien, the Senate sponsor described: "So, if the hospital had a lien for one-third of the recovery amount, if there was any question about assigning the check, one check could be made for a third paid to the clerk of the court [for the hospital], and the balance could be paid to the clients." Statement of Sen. Farris, Senate Hearing, Feb. 11, 1970.

a hospital lien, the hospital "may recover . . . the reasonable cost of such hospital care, treatment and maintenance." The MED states that this amounts to a legislative directive that a party who impairs a hospital lien "must pay the full amount of the hospital lien filed for the medical services rendered to a patient." It emphasizes that such an award would be compensatory, not punitive, because The MED suffered a concrete loss in the form of the unpaid medical services provided to Mr. Baumgartner.

We agree with The MED that it has been damaged by the Baumgartners' failure to pay for the medical services provided to Mr. Baumgartner. However, payment of the full amount of the medical costs has never been the responsibility of either Hartford or Nationwide. Rather, under the HLA, Hartford and Nationwide each had a duty to honor The MED's lien by paying one-third of the Baumgartners' settlement monies to The MED, an amount which is, in this case, far less than the total medical expenses. One-third of the settlement monies is the amount that The MED lost "on account of [the] impairment" of the lien, *i.e.,* the portion of The MED's total loss that is attributable to the insurance companies' wrongful conduct. Requiring the insurance companies to pay the entire cost of The MED's hospital care would result in a remedy that is incongruent with The MED's underlying right *vis-a-vis* the insurance companies.

Moreover, Section 29-22-104(b)(1) states that a hospital "*may* recover . . . the reasonable cost of such hospital care, treatment and maintenance." Use of the word "may" in a statute is typically construed as permissive rather than mandatory. ***See Robinson v. Fulliton***, 140 S.W.3d 312, 320 (Tenn. Ct. App. 2003) (citations omitted). Under Section 29-22-104(b)(1), the hospital may, of course, recover the cost of the hospital care, but only if such an award would reflect the hospital's "damages on account of [the] impairment" of its lien. This could occur when, for example, "one third (1/3) of the damages obtained" by the ill or injured person equals or exceeds the cost of the hospital care. T.C.A. § 29-22-104(b)(1).

Construing Section 29-22-104(b)(1) as applying to the damages actually attributable to the impairment of the hospital lien is consonant with the legislative history. Although the legislative history does not directly address the issue presented in this appeal, it is extensive; the bill was debated thoroughly and was the subject of several amendments. One amendment deleted a provision in the HLA allowing a hospital that sues for the impairment of its lien to recover its attorney fees. A supporter of this amendment in the House discussion stated: "I think there are sufficient protective measures in the bill that if the monies are wrongfully paid then the paying business or corporation is still liable. They may have to come pay it again." Statement of Rep. Runyon, House Session, Feb. 20, 1970. The same representative later clarified that the proposed amendment took out the provision requiring a party who impairs the lien to pay the hospital's attorney fees:

This amendment took that [provision for the payment of the hospital's attorney fees] out. That is, again if I understand your question, the way the bill was drawn, it said that if the person making the payment, or making the settlement, or the compromise, failed to pay the hospital when all of these notices had been given, then that person, which normally I would think would be a defendant insurance company normally, would not only pay the bill of the hospital, but would pay the attorneys that the hospital had to employ to collect it. My amendment took this feature of it out. The hospital will now have to pay their own attorney, because we could only assume under the law, and I think the sponsor agrees, there's not going to be an intentional refusal to pay this. If it's done, it will be done [due] to oversight, and I didn't think it was proper, and I think the sponsor agreed, to penalize a person who simply made a mistake and in all honesty.

Statement of Rep. Runyon, House Session, Feb. 20, 1970. Thus, the amount of damages to be paid by a party who impairs the lien is described in various ways, such as paying "it again" and paying "the bill of the hospital." However, it is clear that legislators expected that the impairment of the hospital lien by an entity such as an insurance company would likely be done inadvertently, and the legislators did not wish "to penalize a person who simply made a mistake." *Id.* An award of damages against the insurance companies that is not congruent with the monies The MED would have received had its lien been honored would be inconsistent with this statement of legislative intent.

We think it is incumbent on this Court to construe Section 29-22-104(b)(1) *in pari materia* with Section 29-22-101(b), the approach taken by our Supreme Court in its interpretation of the HLA in *Nationwide*. Accordingly, we find that The MED's "damages on account of [Hartford's and Nationwide's] impairment" are "one third (1/3) of the damages obtained" by the Baumgartners from Hartford and Nationwide. A damage award in this amount puts The MED in its "rightful position" and is commensurate with the wrongful conduct by Hartford and Nationwide.

Under such circumstances, the "damages on account of such impairment" may not be limited to one-third of the amount paid in settlement to the patient. In its initial ruling, the trial court below held that a lienholder whose lien is impaired can recover "the amount that the lienholder would have received if the lien had been complied with by the insurer plus consequential damages and discretionary costs." This was later appropriately clarified to exclude an award of attorney fees to The MED. Apart from attorney fees, the language of Section 29-22-104(b)(1) does not preclude the inclusion of "consequential damages and other damages" in the award for damages for impairment of The MED's hospital lien. It is unclear from the record whether The MED sought such "consequential damages and other damages."

-26-

Therefore, we must remand the case to the trial court for further proceedings consistent with this Opinion.

## CONCLUSION

In sum, we affirm the trial court's holding that, in the absence of actual knowledge of Hartford's involvement, The MED was not required to name Hartford in its lien or send Hartford a copy of its lien. We also affirm the trial court's holding that the made-whole doctrine is not applicable under the facts of this case. Thus, we affirm the trial court's holding that the payments to the Baumgartners by both Hartford and Nationwide constituted impairment of The MED's valid lien. We hold that The MED may recover only the damages that are attributable to the impairment of its lien by Hartford and Nationwide, in light of the fact that, had The MED's lien been honored, The MED would have received only one-third of the amounts paid to the Baumgartners by Hartford and Nationwide. On this basis, we reverse the trial court's award of $100,000 against Hartford. We also reverse the trial court's award of $8,333.33 against Nationwide only because it is unclear from the record whether The MED also seeks "consequential damages or other damages" against Nationwide. In the absence of such consequential damages or other damages, the amount of the trial court's award against Nationwide would be correct under the HLA.

These holdings pretermit all other issues raised on appeal.

The decision of the trial court is affirmed in part and reversed in part as set forth above, and the cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are assessed one-half to Appellant Shelby County Health Care Corporation and its surety, one-fourth to Appellant Hartford Accident & Indemnity Co. and its surety, and one-fourth to Appellee Nationwide Mutual Insurance Company, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE