# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 6, 2010 Session

## SHELBY COUNTY HEALTH CARE CORPORATION d/b/a REGIONAL MEDICAL CENTER v. NATIONWIDE MUTUAL INSURANCE COMPANY

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-005823-07      Kay S. Robilio, Judge**

_____

**No. W2008-01922-SC-R11-CV - Filed October 13, 2010**

_____

Kevin L. Holt, injured in an automobile accident in Arkansas, was first taken by ambulance to an Arkansas hospital and then transported to the Regional Medical Center in Memphis, where he incurred $33,823.02 in expenses. Shelby County Health Care Corporation, the operator of the Regional Medical Center, filed affidavits for a lien as prescribed by statute. Thereafter, Nationwide Mutual Insurance Company, which had medical coverage for Holt with limits of $5,000, paid $1,290 for ambulance services and $3,710 to the Arkansas hospital. Shelby County Health Care Corporation sued Nationwide for impairment of its lien, seeking as recovery the entire amount due for its medical services to Holt. The trial court awarded $5,000 in damages. The Court of Appeals revised the amount of the judgment to $33,823.02. Because we have determined that liens under the Hospital Lien Act do not attach to medical payment benefits paid pursuant to an insurance policy, the judgment of the Court of Appeals is reversed and the cause is dismissed.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Parks Tedford Chastain and Gordon C. Aulgur, Nashville, Tennessee, for the appellant, Nationwide Mutual Insurance Company.

Curtis H. Goetsch and Gary Carlton McCullough, Germantown, Tennessee, for the appellee, Shelby County Healthcare d/b/a Regional Medical Center.

Benjamin K. Lauderback, Hanson R. Tipton, and Sarah Larkin, Knoxville, Tennessee, for the amicus curiae, Tennessee Municipal League Risk Management Pool.

Melanie M. Stewart and Matthew S. Russell, Germantown, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

Edward Knight Lancaster and Julie Pedigo Bowling, Columbia, Tennessee, for the amicus curiae, Tennessee Farmers Mutual Insurance Company.

Robyn E. Smith and William Beesley Hubbard, Nashville, Tennessee, for the amicus curiae, Tennessee Hospital Association.

## OPINION

### Facts and Procedural History

On May 29, 2006, Kevin L. Holt ("Holt") sustained head trauma in an automobile accident in Arkansas. He was initially taken by ambulance to the Regional Medical Center of Northeast Arkansas, but the nature of his injuries required his transfer to the Regional Medical Center in Memphis, a hospital operated by the plaintiff, Shelby County Health Care Corporation ("the Med"). On the day following the accident, Holt was discharged. While the record does not disclose the extent of Holt's injuries or the details of the treatment provided by the Med, the cost of its medical services amounted to $33,823.02. Holt was covered by a policy of insurance issued by the defendant, Nationwide Mutual Insurance Company ("Nationwide"), which included medical payment benefits up to $5,000.

On June 9, 2006, the Med filed an Affidavit for Hospital Lien as authorized by statute. The affidavit, signed by the Med's manager of insurance collections, named as "liable for the charges, costs, and expenses of hospital care, treatment and maintenance" both Holt and the "Municipal Health Benefit Fund," an entity located in North Little Rock, Arkansas. Six days later, the Med notified by letter both Holt and the Municipal Health Benefit Fund of the affidavit. On September 25, 2006, the Med filed an amended affidavit adding Nationwide as a responsible party. Nationwide, the Municipal Health Benefit Fund, and Holt were sent notice of the amended affidavit within three days. After the filing of the lien, Nationwide made two medical benefit payments for medical care related to the accident – $1,290 to Medic One for ambulance services and $3,710 to the Regional Medical Center of Northeast Arkansas – which exhausted the medical benefits available under the policy.

On November 20, 2007, the Med – aware that Nationwide's $5,000 coverage limit had been exhausted – filed suit claiming that Nationwide had impaired its hospital lien by making payments to Medic One and the Arkansas hospital. The Med sought to recover $33,823.02,

the full amount of Holt's hospital care costs. In response, Nationwide acknowledged that the Med had filed an affidavit for a hospital lien but denied any impairment of the lien.

Both the Med and Nationwide filed motions for summary judgment. In its motion for summary judgment, the Med contended that a hospital lien, by the terms of the statute, may be validly asserted against "claims" or "demands" arising out of an insurance contract, that unauthorized payments under a contract without approval of the lien holder constituted impairment of a hospital lien, and that the Med had a statutory right to recover the full cost of its services arising from Holt's care in the event of an impairment, regardless of any limitations on coverage. In its motion for summary judgment, Nationwide offered four alternative arguments based upon the terminology of the applicable statute: first, that there was no valid hospital lien against Nationwide because there had been no "judgment, settlement, or compromise," as contemplated by the statute, on the claim; second, that even if the lien was valid, the direct payments to other medical service providers did not constitute an impairment of a lien because they were not made pursuant to a "judgment, settlement, or compromise;" third, that even if Nationwide did impair a valid lien, the Med's statutory right to recover was capped by statute at $1,666, one-third of the value of the policy; and fourth, that even if the Med was entitled to recover more than $1,666, it could not recover beyond the $5,000 limit of the policy.

Because no material facts were in dispute, the trial court granted summary judgment, concluding that the Med had a valid lien and that Nationwide had impaired the lien, but that the Med was entitled to recover only $5,000, the limits of the medical coverage. The Med appealed the ruling, arguing a statutory entitlement to the full $33,823.02. In response, Nationwide contended that the Med was not entitled to any recovery at all. The Court of Appeals, relying on a prior unpublished opinion, ruled that, under Tennessee Code Annotated section 29-22-104(b)(1) (2000), the lien had been impaired by Nationwide and the Med was entitled to recover the full "reasonable cost of . . . hospital care, treatment and maintenance." When Nationwide requested a rehearing, the Court of Appeals filed an amended opinion correcting a misstatement of fact in its initial ruling, but otherwise denied relief. This Court granted an application for permission to appeal by Nationwide to consider the validity of the hospital lien, whether the lien had been impaired, and, if so, the extent of liability.

### Standard of Review and Statutory Interpretation

Initially, a summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008); Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). The scope of review of a grant of summary judgment is well-established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.

Hunter v. Brown, 955 S.W.2d 49, 50-51 (Tenn. 1997); Cowden v. Sovran Bank/Cent. S., 816 S.W.2d 741, 744 (Tenn. 1991).

Further, when interpreting a statute, we "must first ascertain and then give full effect to the General Assembly's intent and purpose" in drafting those sections. Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). We presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005) (quoting Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968)). When the statutory language is clear and unambiguous, we simply apply its plain meaning. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

### The Hospital Lien Act

Hospital lien statutes have been adopted in over forty states, with the oldest such statute having been enacted in Nebraska in 1927. Bergan Mercy Health Sys. v. Haven, 620 N.W.2d 339, 345 (Neb. 2000). Tennessee's Hospital Lien Act (the "HLA"), ch. 527, 1970 Tenn. Pub. Acts 529 (codified as amended, Tenn. Code Ann. §§ 29-22-101 to -107 (2000)), was adopted in 1970 and captioned "AN ACT to create for hospitals a lien upon all causes of action for damages accruing to persons having received care and treatment for illness or injuries and to provide the procedure for the perfecting, recording, enforcement and release of such lien." Id. at 529. In the ensuing decades, the HLA has been amended a handful of times, but has not been substantially altered.[1] As a result, the version of the HLA in effect at all times pertinent to this litigation is largely the same as the original enactment.

In a 1994 opinion, the Attorney General surveyed the legislative debate accompanying the enactment of the HLA in an effort to discern its purpose:

In enacting this legislation, the legislature indicated that the purpose of this

---

[1] See Act of April 24, 1991, ch. 254, 1991 Tenn. Pub. Acts 431 (establishing that if a lien is not yet perfected "at the time an . . . entity reaches a settlement and obtains a release of liability on or pays a claim filed by a . . . person against such . . . entity," the later-perfected lien "shall not apply to or create any additional liability on the part of the . . . entity paying the settlement or claim"); Act of March 23, 1988, ch. 666, 1988 Tenn. Pub. Acts 347 (increasing fee for filing of lien from $1.00 to $10.00 and fee for filing release of lien from $0.50 to $2.00); Act of April 20, 1987, ch. 262, 1987 Tenn. Pub. Acts 486 (changing time for filing lien from twenty to 120 days from date of patient's discharge); Act of February 28, 1980, ch. 534, 1980 Tenn. Pub. Acts 228 (changing the phrase "workmen's compensation" to "workers' compensation").

Act is to create liens for hospitals to ensure that hospital bills are paid. The legislature recognized that hospitals were losing funds from providing care to individuals who later collected a settlement or judgment for their injuries but failed to pay their hospital bills. The legislature noted that this Act would help keep hospital costs down by setting up an orderly method for the establishment of liens on such settlements or judgments.

Tenn. Att'y Gen. Op. No. 94-067 (May 13, 1994) (citations omitted); see also Martino v. Dyer, No. M1999-02397-COA-R3-CV, 2000 WL 1727778, at *2 (Tenn. Ct. App. Nov. 22, 2000) (quoting Tenn. Att'y Gen. Op. No. 94-067). Other sources have identified policies warranting hospital lien statutes. For example, the Arkansas Supreme Court observed that its statute "was enacted for the very humane purpose of encouraging physicians, hospitals and nurses to extend their services and facilities to indigent persons who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities." Buchanan v. Beirne Lumber Co., 124 S.W.2d 813, 815 (Ark. 1939); see also Bashara v. Baptist Mem'l Hosp. Sys., 685 S.W.2d 307, 309 (Tex. 1985) (observing that a hospital lien statute is to provide an additional method of securing payment for medical services, thus ensuring the prompt and adequate treatment for accident victims); Cmty. Hosp. v. Carlisle, 648 N.E.2d 363, 365 (Ind. Ct. App. 1995) ("By allowing health care providers direct interests in funds collected by personal injury patients, the statute furthers the important policy of reducing the amount of litigation . . . otherwise . . . necessary to secure repayment of the health care debts."). Because this rationale had been attributed to hospital lien statutes that preceded our 1970 enactment and is widely accepted as a reasonable basis for similar statutes, see 40A Am. Jur. 2d Hospitals and Asylums § 9 (2008), we are persuaded that our General Assembly also embraced a "humane purpose" by adopting the HLA.

First, Tennessee Code Annotated section 29-22-101(a) sets forth who may file a lien and what a lien may be filed against:[2]

Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien for all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the

---

[2] A lien created by statute is limited in operation and effect by its terms and can be enforced only in the circumstances provided for in the legislation. Phifer v. Gulf Oil Co., 401 S.W.2d 782, 785 (Tenn. 1966); Rent-a-Car Co. v. Belford, 45 S.W.2d 49, 51 (Tenn. 1932).

case of such person's death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

(Emphasis added.)  Secondly, section 29-22-101(b) sets a cap on a lien holder's recovery:

The hospital lien, however, shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person by judgment, settlement or compromise rendered or entered into by such person or such person's legal representative by virtue of the cause of action accruing thereto.

(Emphasis added.)  Finally, section 29-22-104 recognizes the right of recovery for an impairment of the lien:

(a) No release or satisfaction or any action, suit, claim, counterclaim, demand, judgment, settlement or settlement agreement, or any of them, shall be valid or effectual as against such lien unless the lienholder shall join therein or execute a release of the lien.

(b)(1) Any acceptance of a release or satisfaction of any such cause of action, suit, claim, counterclaim, demand or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in this chapter shall prima facie constitute an impairment of such lien, and the lienholder shall be entitled to an action at law for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance.

(Emphasis added.)

## Case Law

Since the passage of the HLA, courts have occasionally been called upon to interpret its terms.  For example, in University of Tennessee v. Prudential Insurance Co., No. 03A01-9611-CV-00345, 1997 WL 119582 (Tenn. Ct. App. Mar. 18, 1997), the unpublished opinion relied upon by our Court of Appeals, the issue was whether a hospital lien had been impaired by Prudential's payment of medical coverage directly to the insured motorist.  In that case, the court did not limit the hospital lien to settlements or judgments in tort.  In consequence, Prudential, which had constructive notice of the hospital lien and nevertheless paid directly to the insured the hospital expenses covered by the policy, was ordered to pay the full amount of the hospital's claim.  Observing that when the hospital sought damages for the "impairment of its lien," in contrast to damages for the "enforcement of the lien," the court

held that the statute did not limit the amount of the award to "one-third of the damages obtained or recovered." Id. at *3; see Tenn. Code Ann. § 29-22-101(b). In a 2000 case involving a hospital lien claim in the context of an automobile liability insurance settlement, rather than a medical benefits payment, our Court of Appeals appears to have more narrowly construed the HLA "as providing hospitals with a mechanism to ensure that those people who recover damages [only] for injuries pay their hospital bills out of those recoveries." Martino, 2000 WL 1727778, at *2 (emphasis added).

In Progressive Specialty Insurance Co. v. University of Alabama Hospital, 953 So.2d 413 (Ala. Ct. App. 2006), the Alabama Court of Appeals, much like the ruling in Prudential, held that under its statutory scheme a hospital lien was applicable to medical benefit payments. Progressive paid medical benefits directly to the insured despite having constructive notice of a hospital lien in the amount of $27,898.57. The Alabama court, rejecting an argument by Progressive that the lien was invalid because their statute applied only to causes of action or claims in tort and not to insurance contracts, concluded that because "a lien attaches to all actions, claims, counterclaims, and demands that accrue to a patient on account of the injuries for which he or she was treated . . . , the terms 'claim' and 'demand' are not limited . . . solely to tort claims . . . ." Id. at 415. Significantly, Alabama's hospital lien statute, Ala. Code § 35-11-370 (1991), does not contain a reference to "damages" as does Tennessee Code Annotated section 29-22-101(b).

More recently, in Shelby County Health Care Corp. v. Globe American Casualty Co., 638 F. Supp. 2d 882 (W.D. Tenn. 2008), the court addressed a claim by the hospital for the impairment of its lien. The insured, who had medical coverage through Globe American with a limit of $1,000, was injured and taken to the hospital by Air Evac LifeTeam. The hospital provided treatment for approximately two months at a cost of over $724,000. Air Evac submitted a bill, and Globe American paid the extent of its coverage, exhausting the medical benefits under the policy. The hospital sought damages for the impairment of its lien in the entire amount of the medical services rendered. Id. at 883-84. Concluding that the statute did not create a lien in favor of the hospital against the $1,000 payment made, the district court held that no "'causes of action, suits, claims, counterclaims, or demands accru[ed]' to [the insured], as benefits under [the] policy were paid directly to Air Evac." Id. at 884 (quoting Tenn. Code Ann. § 29-22-101(a)). The district court distinguished the holding in Prudential, wherein the insurer had paid the medical costs covered by the policy directly to the insured, and explained as follows:

> Section 29-22-101(b) is also in line with this view, in that it limits hospital liens to one third "of the damages obtained or recovered *by such person by judgment, settlement or compromise rendered or entered into by such person.*" Tenn. Code Ann. § 29-22-101(b) (emphasis added). It is undisputed that there was no judgment, settlement or compromise obtained or recovered by [the

insured]. Further, § 29-22-104(b)(1) contemplates the acceptance of a release or satisfaction of the injured's claim or settlement of the cla[i]m without a release or satisfaction of the hospital lien as prima facie proof of the impairment of the lien. Here, neither [the insured] nor the [insurer] nor Air Evac entered into any release or settlement so as to constitute such an impairment under the Tennessee statute.

Id. at 884-85.

While instructive, these cases do not address the fundamental question before us today: that is, whether the General Assembly of this state intended to extend hospital liens to medical benefits provided for in an automobile insurance policy.

**Analysis**

The Med argues that because Nationwide has impaired its lien under these statutory provisions, it is entitled to recover the full cost of Holt's medical treatment. Because the HLA only authorizes the attachment of hospital liens to "damages" obtained by persons to whom care, treatment or maintenance is furnished, or to their legal representatives in the case of their death, we must disagree.

Pursuant to section 29-22-101(a), a hospital lien may be applied to "any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of such person's death." In other words, the plain language of the statute permits the perfection of a lien in favor of a hospital against specific rights of recovery accruing to the patient (or in the event of death, his or her representative) and related to the injuries that resulted in hospitalization. While this language, standing alone, might reasonably be construed as broad enough to encompass medical payment benefits, both Nationwide and amicus Tennessee Defense Lawyers Association ("TDLA") stress that it must be read in conjunction with subsection (b), which provides that the hospital lien "shall not apply to any amount in excess of one third (1/3) of the damages obtained or recovered by such person by judgment, settlement, or compromise rendered or entered into . . . by virtue of the cause of action accruing thereto." Nationwide argues that its "MedBen payments to medical providers did not constitute a payment of damages to such person which are obtained or recovered as a judgment, settlement, or compromise." This construction of the statute is consistent with that of the Court of Appeals in the Martino case, which interpreted section 29-22-101 "as providing hospitals with a mechanism to ensure that those people who recover damages for injuries pay their hospital bills out of those recoveries." 2000 WL 1727778, at *2 (emphasis added).

8

Preliminarily, Holt's obligations to the ambulance service and the Arkansas hospital were not "causes of action, suits, claims, [or] counterclaims," as those terms are used in the statute. While the phrase "cause of action" can, at times, be difficult to define, cf. Creech v. Addington, 281 S.W.3d 363, 378-79 (Tenn. 2009), a common thread among the definitions provided by a variety of sources, is that a "cause of action" is associated with a right of one party to sue another. See Black's Law Dictionary 251 (9th ed. 2009) (providing three definitions for "cause of action": "a factual situation that entitles one person to obtain a remedy in court from another person"; "[a] legal theory of a lawsuit"; and "[l]oosely, a lawsuit"); The Law Dictionary 61 (6th ed. 1986) (describing "cause of action" as "a flexible term, the definition of which is occasionally controversial" and defining it both as "[a]n aggregation of facts which will cause a court to grant relief, and therefore entitles a person to initiate and prosecute a lawsuit" and "[t]he concurrence of a right belonging to a plaintiff, and a wrong committed by a defendant, which breaches the right and results in damage"); Webster's Third New International Dictionary Unabridged 156 (1993) (defining "cause of action" as "the ground on which the plaintiff's case is based"). Causes of action may arise out of insurance contracts, most notably when one party breaches the terms. There is no indication in this record, however, that the payment made to the medical service providers was pursuant to a "cause of action," as opposed to Nationwide's voluntary performance of its contractual duty. Examples of causes of action arising out of contracts include causes of action for breach, declaratory judgment actions seeking construction of terms, or actions seeking rescission based on fraud. A contractual duty alone, absent grounds for suit, is not a "cause of action."

Further, there was no "suit," as the term is used in the HLA. See Black's Law Dictionary 1572 (defining "suit" as "[a]ny proceeding by a party or parties against another in a court of law"). The same rationale extends to the terms "claims" and "counterclaims." While "claim," standing alone, is broad indeed, that term is immediately followed by "counterclaims," leading us to conclude that the General Assembly meant a "claim for relief," as used in the litigation setting. See Black's Law Dictionary 281-83 (defining "claim" and "claim for relief" in terms of enforceabilty by a court). Because there was no litigation between Nationwide and the other medical service providers, there have been no claims or counterclaims.

The last possible basis for the lien under the terms of the statute is that the rights of recovery by the ambulance service and the Arkansas hospital could be characterized as "demands." A "demand" is defined as "[t]he assertion of a legal or procedural right." Black's Law Dictionary 495. In our view, the term "demands" qualifies as ambiguous in the context of "causes of actions, suits, claims, [or] counterclaims," and should be construed in a manner consistent with the other terms within the HLA, all of which pertain to an insured's potential claim against a responsible tortfeasor who caused his or her injury or illness.

9

Several reasons lead us to the conclusion that the term "demands" does not include medical benefits. Section 29-22-101(b) limits the amount of recovery for a hospital lien to no more than "one-third (1/3) of the damages obtained or recovered . . . by judgment, settlement, or compromise." The term "damages" has been generally defined as "[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another." Black's Law Dictionary 389 (6th ed. 1990). Because an insurer's payment of medical benefits pursuant to its contract with the insured does not meet the traditional definition of "damages," it is unlikely that our General Assembly contemplated hospital liens as to coverage of that nature. The bill's caption provides additional guidance in our effort to ascertain legislative intent: "AN ACT to create for hospitals a lien upon all causes of action for damages accruing to persons having received care and treatment for illness or injuries and to provide the procedure for the perfecting, recording, enforcement and release of such lien." 1970 Tenn. Pub. Acts 529 (emphasis added); see Hyatt v. Taylor, 788 S.W.2d 554, 556 (Tenn. 1990) ("In seeking legislative intent courts should look to the entire statute including the *caption* and policy statement.").

Further, the legislative history lends credence to our determination that medical benefits payable under an insurance policy are not subject to a hospital lien. For example, when asked during the Senate floor debate whether the Act "only applies to insurance cases," the bill's sponsor, Senator Farris, responded that "it would be a recovery on a tort action. If you recovered funds in a court action, whether they were paid by the insurance company or if the plaintiff recovered from any cause, then there's a lien on his recovery." Statement of Sen. Farris, Senate Session, Feb. 18, 1970. Similarly, the House sponsor of the bill stated that it would create a hospital lien "on the recovery of any settlement or judgment of a lawsuit," and that the Act "would apply to any lawsuit that dealt with a hospital where a person had been injured and as a result of that injury they incurred hospital costs and were involved in a lawsuit dealing with those bills." Statement of Rep. Blank, House Session, Feb. 20, 1970. Finally, there was no mention of "medical benefits" whatsoever in comments recorded in the Senate and the House. All of this suggests that the General Assembly limited the attachment of hospital liens to recovery by an injured person from a responsible tortfeasor.

We conclude, therefore, that the statutory hospital lien does not extend to payments made pursuant to the medical payment benefits provision of an insurance policy. The Court of Appeals' opinion in University of Tennessee v. Prudential Insurance Co., 1997 WL 119582 at *2, which held that the HLA provides for hospital liens that attach to contractual medical payment proceeds as well as to tort damages, is hereby overruled. Based upon our holding, it is not necessary to address whether the Med's lien was impaired by Nationwide.

**Conclusion**

Because the attachment of liens under the HLA is limited to the recovery of "damages," the Med did not have a valid lien on the medical payment insurance proceeds that Nationwide paid to the third party service providers. The judgment of the Court of Appeals is, therefore, reversed and summary judgment is granted to Nationwide. Costs are assessed to Shelby County Health Care Corporation and its surety, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE