# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 2, 2011 Session

## DAVID BATES D/B/A DAVID BATES CONSTRUCTION CO. v. CAROLINE BENEDETTI

**Appeal from the Chancery Court for Knox County**
**No. 172212-2     Daryl R. Fansler, Chancellor**

---

**No. E2010-01379-COA-R3-CV Filed March 21, 2011**

---

David Bates d/b/a David Bates Construction Co. ("Plaintiff") sued Caroline Benedetti ("Defendant") for breach of a construction contract involving demolition of an existing residential garage and construction of a new one. Defendant answered the complaint and filed a counterclaim. After a bench trial, the Trial Court entered its order finding and holding, *inter alia*, (1) that Plaintiff had not proven damages, (2) that Defendant had failed to comply with Tenn. Code Ann. § 66-36-103 with regard to her counterclaim and, therefore, pursuant to the statute her counterclaim should be abated, and (3) that Defendant also had failed to give notice and an opportunity to cure pursuant to the common law and that her counterclaim should be dismissed for that reason as well. Defendant appeals the abatement and dismissal of her counterclaim. We find that Tenn. Code Ann. § 66-36-103 does not apply to the case at hand, but that the Trial Court correctly dismissed Defendant's counterclaim. We, therefore, affirm the Trial Court's order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Michael S. Shipwash, Knoxville, Tennessee, for the appellant, Caroline Benedetti.

Bill W. Petty, Knoxville, Tennessee, for the appellee, David Bates d/b/a David Bates Construction Co.

# OPINION

## Background

In February of 2006, Plaintiff and Defendant executed a written contract ("the Contract") which provided for Plaintiff to demolish an existing detached residential garage and build a new garage with an upper story on Defendant's real property for the contract price of $40,770. Defendant became dissatisfied during construction with Plaintiff's work. She hired an attorney who wrote a letter to Plaintiff in July of 2006 asserting that Plaintiff was in breach of the Contract. At that time, construction on the garage was approximately 50% complete. Defendant hired someone else to complete the garage.

In April of 2008, Plaintiff sued Defendant alleging, in part, that even though Plaintiff had worked diligently to complete the job pursuant to the Contract, Defendant had breached the Contract by having Plaintiff's work permit suspended and/or revoked. Defendant answered the complaint and filed a counterclaim alleging misrepresentation, breach of contract, fraud, negligence, and violations of the Tennessee Consumer Protection Act. The case was tried without a jury in May of 2010.

Plaintiff testified at trial about Defendant's complaint that the garage was not constructed to the size agreed on, which Defendant alleged was 20' x 20'. Plaintiff stated that the first time Defendant raised any issue with regard to the 19' x 20' size of the garage as built was after she hired an attorney. Plaintiff testified that a document that went to the city showed that "the front was 20-foot wide with a dimension, arrows, and it shows the depth was 19-feet deep, and that was on 6/15/06." Plaintiff testified that both he and Defendant signed that document. When asked if Defendant had raised any issue about the dimensions of the garage before terminating Plaintiff from the job, Plaintiff stated:

> Not - - no. As a matter of fact, when it was being excavated - - when the excavator - - I wanted him to build a 20 by 20. I wanted him to put a footer in for a 20 by 20. When he was excavating it, the pictures will show how restricted that lot is. He said it was going to be almost impossible to get a 20 by 20 in there unless he cut further back in the bank. And [Defendant] was at home that day. We got her out there and told her that it was going to work out about 19 by 20, and she said that was no problem at all.

Plaintiff also testified about a crack in the foundation of the garage. When asked what he did with regard to the foundation, Plaintiff testified:

> We backfilled it with number 57 stone, is what I ordered, which is washed

stone, clean stone. We backfilled it up to almost the area where you'll see the waterproofing. We put two coats of waterproofing on it. We put drain tile, four-inch slotted drain tile in there. And I took some photos of the drain tile and showed that it was in there. We continued to backfill it with the stone above the drain tile. And we couldn't get any equipment in there to backfill it, so my men had to backfill it with five-gallon buckets and shovels. I've got a picture of that.

When asked how deep the gravel was, Plaintiff stated: "It would go from probably two-and-a-half feet down to the front where the entrance of the garage is, to maybe eight inches." When asked how deep the soil was that was put on top of the gravel, he stated: "It was probably anywhere from eight inches, maybe to 10, 12 inches. And that was topsoil that was left on the job site to backfill that gravel with." Plaintiff was asked if what he did is consistent with the building code, and he stated:

> The code doesn't require that you use gravel. It's a good building policy, but the code will actually allow you to fill up, I believe it's on an eight-inch block foundation, they'll allow you to fill up, backfill, about five feet unsupported soil. Problem if you use a lot of soil, is you get hydraulic pressure, which you don't get with the rock. Because rock will drain the water out of there and not establish hydraulic or hydrostatic pressure against the foundation walls.

Defendant testified at trial, and when asked to explain why she was not happy with Plaintiff's performance, she stated:

> He was not building things. He didn't, first of all, build a 20 by 20. It was faulty work. He wasn't showing up. He misrepresented himself saying he had a good work record and said - - thought he was trustworthy. I go back and find out that he's with BB&B and the Tennessee Contractors. He did not represent himself. I trusted him. And it was just not anything that I - -

Defendant also testified that when Plaintiff left the job, the crack in the foundation "had been there for weeks."

When asked if she has suffered damage because the structure is 19' x 20' instead of 20' x 20', Defendant stated:

> Yes. I'm not able to park my cars. There's maybe a half an inch to even be able to get them into the garage. I can't store my items correctly. I had to have storage built, the wall-to-wall storage, so that I could have - - I pull the

cars straight into the wall and the storage is around the car, so I can - - there can be nothing in front of the car.

Timothy Scott Allen, the owner of Tim Allen Remodeling and Home Improvement, was hired by Defendant to complete the garage. Mr. Allen is not a licensed contractor. He testified that the finished garage measures 20 feet 1 ½ inches x 19 feet 1 ½ inches.

After trial, the Trial Court entered its order on May 27, 2010 finding and holding, *inter alia*:

This is a suit involving a contract to construct a residential garage. The original contract called for the construction of a garage 20ft x 20ft.

* * *

According to the Plaintiff, who is suing to collect the balance owed on the original contract, they were unable to build a 20 x 20 garage without additional excavating. According to him, he discussed with the Defendant and she approved a 19 x 20 garage. He said he never heard a complaint about the size of the garage until Defendant hired an attorney some time in July of 2006.

On July 13, 2006, Plaintiff says that he was told by Defendant's attorney to terminate work on the project and not return.

The Defendant has counter-sued alleging breach of contract and a violation of the Tennessee Consumer Protection Act. A number of other counts are contained in the counter-claim which seeks compensatory damages in the amount of $100,000.

The Defendant had a number of complaints about [Plaintiff's] progress on the job. The primary complaints regarding the structure had to do with the size of the garage, a crack in the block foundation, and what Defendant deemed to be extraordinarily slow progress. A complete list of complaints was set forth in a letter Defendant wrote to the Plaintiff on July 10, 2006, but which Plaintiff denies having ever received. As can be seen from Exhibit No. 12, Defendant had a number of complaints regarding the Plaintiff's business demeanor, his failure to communicate, and general dissatisfaction with the progress of the work.

After July 13, 2006, Defendant obtained the services of Tim Allen, an unlicensed contractor, to complete the work on the garage. She initially claimed she paid $64,000 to Allen to complete the work. However, Allen was unable to identify with any degree of certainty the amount of charges that were actually attributable to the completion of the original contract between Plaintiff and Defendant. Nevertheless, Counter/Plaintiff claims she should be entitled to recover $14,340.37 as set forth in her Proposed Findings [of] Fact.

* * *

**COUNTER-CLAIM**

[Plaintiff] says [Defendant] failed to comply with Tenn. Code Ann. § 66-36-103, **Procedures and requirements for notification and remedying construction defects.** That statute requires in actions brought against a contractor related to an alleged construction defect, the claimant shall before filing an action, serve written notice of claim on the contractor. The section then goes on to set up a procedure whereby the contractor will be allowed to inspect the alleged defect, propose a remedy, or in the alternative, deny liability.

Tenn. Code Ann. § 66-36-102 states that if a claimant files an action without first complying with these requirements, on motion by a party to the action, the court shall abate the action. Blacks' Law Dictionary defines an abatement of an action as the entire overthrow or destruction of a suit so that it is quashed and ended. Section 66-36-102 does provide that the abatement of the action will be without prejudice. However, in this case the claimant has completed all of the work and is in no position to ever give the contractor notices required by the statute.

Counsel for [Defendant] and she both assert that notice was given. They offered Exhibit Nos. 5 and 12 as evidence of said notice. However, neither of these letters comply with the statute. Additionally, the plain language of these letters indicate there was no anticipation that [Plaintiff] would be allowed back on the job.

For example, in Exhibit No. 5, [the letter from Defendant's attorney], he makes demand on [Plaintiff] for $25,000. The letter says "This amount will cover the payment for someone else to finish the job and to correct the aforementioned deficiencies." In Exhibit No. 12, which [Plaintiff] denies ever

receiving, [Defendant] says in her last sentence "I trust that your future endeavors will be successful and that you are able to find out what works for you." Although not as straightforward as [her attorney's] letter, the clear inference to be drawn from the last line of Exhibit No. 12 is that [Defendant] did not expect [Plaintiff] to return to the job.

Additionally, the unrefuted testimony of [Plaintiff] is that [Defendant's attorney] left a voice message at [Plaintiff's] home on the evening of July 12 advising him not to return to the job site.

Aside from Tenn. Code Ann. § 66-36-101 *et seq.* the common law is that one should give notice designed to allow the defaulting party to repair the defective work, to reduce the damages, to avoid additional defective performance and to promote settlements of disputes. *McClain* [*v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990)]. Thus, [Defendant] was obligated to give the Plaintiff notice and an opportunity to cure before terminating the contract for faulty performance. In this case, she neither complied with the statute nor the common law requirement to allow the contractor to cure. The failure to do so bars her right to recover in this case.

Defendant appeals the abatement and dismissal of her counterclaim.

## **Discussion**

Although not stated exactly as such, Defendant raises one issue on appeal: whether the Trial Court erred in abating and dismissing her counterclaim. Plaintiff raises no additional issues.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The case now before us on appeal involves the interpretation of a statute, and as our Supreme Court has instructed:

[W]hen interpreting a statute, we "must first ascertain and then give full effect to the General Assembly's intent and purpose" in drafting those sections.

*Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). We presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (Tenn. 1968)). When the statutory language is clear and unambiguous, we simply apply its plain meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

*Shelby County Health Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d 88, 92 (Tenn. 2010).

The Trial Court held that Defendant's counterclaim should be abated pursuant to Tenn. Code Ann. § 66-36-101 *et seq.* As pertinent to this appeal, Tenn. Code Ann. § 66-36-102 provides:

**66-36-102. Compliance with requirements.** – If a claimant files an action without first complying with the requirements of this chapter, on motion by a party to the action, the tribunal having jurisdiction shall abate the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.

Tenn. Code Ann. 66-36-102 (2004). In pertinent part, Tenn. Code Ann. § 66-36-103 provides:

**66-36-103. Procedures and requirements for notification and remedying construction defects.** – (a) In actions brought against a contractor, subcontractor, supplier, or design professional related to an alleged construction defect, the claimant shall, before filing an action, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable. The claimant shall endeavor to serve the notice of claim within fifteen (15) days after discovery of an alleged defect, but the failure to serve notice of claim within fifteen (15) days does not bar the filing of an action, subject to § 66-36-102.

(b) Within ten (10) business days after service of the notice of claim, the contractor, subcontractor, supplier, or design professional may inspect the structure to assess each alleged construction defect. The claimant shall provide the contractor, subcontractor, supplier, or design professional and its contractors or agents reasonable access to the structure during normal working hours to inspect the structure, to determine the nature and cause of each alleged construction defect and the nature and extent of any corrections, repairs or replacements necessary to remedy each defect. The inspection may include destructive testing.…

Tenn. Code Ann. § 66-36-103 (2004). The term 'action' as used in Tenn. Code Ann. § 66-36-103 is defined in Tenn. Code Ann. § 66-36-101 as follows:

(1) "Action" means any civil action for damages or indemnity asserting a claim for damage to or loss *of commercial property* caused by an alleged construction defect, but does not include any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect;

Tenn. Code Ann. § 66-36-101(1) (2004) (emphasis added). Commercial property is defined as "all property which is not residential property. Residential property is property upon which a dwelling or improvement is constructed or to be constructed consisting of one dwelling unit intended as a residence of a person or family." Tenn. Code Ann. § 66-36-101(3) (2004).

The language of the statute is clear and unambiguous. It requires a claimant to provide notice prior to filing an action "for damage to or loss *of commercial property* …," not residential property. Tenn. Code Ann. § 66-36-101(1) (2004) (emphasis added). As the statute is clear and unambiguous, we apply its plain meaning. *See Shelby County Health Care Corp.*, 325 S.W.3d at 92.

In the case now before us on appeal, the Trial Court specifically found that the Contract was for the construction of a residential garage. The evidence in the record does not preponderate against this finding. As Defendant's counterclaim is an action for damage to or loss of residential property, not commercial property, Defendant was not required to comply with Tenn. Code Ann. § 66-36-101 *et seq.* As such, Defendant's claim was not properly abated for failure to comply with Tenn. Code Ann. § 66-36-101 *et seq.*

We next consider whether the Trial Court correctly dismissed Defendant's counterclaim under the common law for failure to give Plaintiff notice and an opportunity

to cure. In its order, the Trial Court stated that the common law required that notice and an opportunity to cure be given to the contractor, Plaintiff, prior to Defendant's terminating the contract for faulty performance. The Trial Court relied upon *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194 (Tenn. Ct. App. 1990), for this proposition.

In *McClain*, this Court imposed upon a contractor a duty to give its subcontractor notice and an opportunity to cure alleged defects prior to terminating a contract for a commercial construction project. *Id*. at 198-99. In *Carter v. Krueger*, this Court extended the rule to a case wherein a doctor and a contractor entered into a contract for the construction of an addition to the doctor's professional office building. *Carter v. Krueger*, 916 S.W.2d 932, 935-36 (Tenn. Ct. App. 1995). The *Carter* Court quoted *McClain* wherein it was stated: "Requiring notice is a sound rule designed to allow the defaulting party to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes." *Carter*, 916 S.W.2d at 935 (quoting *McClain*, 806 S.W.2d at 198). The rule requiring giving notice and an opportunity to cure has also been extended to cases involving residential construction. *E.g., Greeter Const. Co. v. Tice*, 11 S.W.3d 907, 910-11 (Tenn. Ct. App. 1999); *Lavy v. Carroll*, No. M2006-00805-COA-R3-CV, 2007 Tenn. App. LEXIS 809, at **9-10 (Tenn. Ct. App. Dec. 26, 2007), *Rule 11 appl. perm. appeal denied May 27, 2008*; and *Custom Built Homes by Ed Harris v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 Tenn. App. LEXIS 781, at **14-15 (Tenn. Ct. App. Dec. 11, 2006), *no appl. perm. appeal filed*.

In the case now before us on appeal, the Trial Court found that Defendant failed to give Plaintiff notice of the alleged defects and an opportunity to cure. The Trial Court found that Defendant sent Plaintiff a letter dated July 10, 2006, and that Defendant's attorney sent Plaintiff a letter dated July 12, 2006, but that "the plain language of these letters indicate there was no anticipation that [Plaintiff] would be allowed back on the job," in order to cure the alleged defects. In addition, the evidence in the record shows that Plaintiff denied ever receiving Defendant's July 10, 2006 letter. Furthermore, the Trial Court found that "the unrefuted testimony of [Plaintiff] is that [Defendant's attorney] left a voice message at [Plaintiff's] home on the evening of July 12 advising him not to return to the job site." This evidence provides further support for the Trial Court's finding that Plaintiff was not allowed an opportunity to cure the alleged defects.

The evidence in the record on appeal does not preponderate against the Trial Court's findings that Defendant failed to give Plaintiff notice and an opportunity to cure the alleged construction defects pursuant to the common law. As such, we hold that the Trial Court correctly dismissed Defendant's counterclaim. We, therefore, affirm the Trial Court's May 27, 2010 order.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Caroline Benedetti, and her surety.

_____
D. MICHAEL SWINEY, JUDGE