# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 10, 2016 Session

## SECURITY EQUIPMENT SUPPLY, INC. v. RICHARD H. ROBERTS, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 13770II      Carol L. McCoy, Chancellor**

---

**No. M2016-00423-COA-R3-CV- Filed November 28, 2016**

---

At issue is whether a taxpayer's sales are properly classified as "retail sales" or "wholesale sales" under the Business Tax Act, Tenn. Code Ann. §§ 67-4-701 to -730, and Tenn. Comp. R. & Regs. 1320-04-05-.47. Following an audit, the Tennessee Department of Revenue determined that the taxpayer misclassified its sales as "wholesale sales," when they should have been classified as "retail sales," and assessed the taxpayer with $74,088.10 in tax liability. After paying the assessment, the taxpayer filed suit seeking a refund. The chancery court held that the sales in question were "retail sales" within the context of the statute and denied the request for a refund. We conclude that the business activities were properly classified as retail sales; therefore, we affirm the judgment of the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

W. Carl Spining, Nashville, Tennessee, for the appellant, Security Equipment Supply, Inc.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Brian J. Ramming, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Revenue.

## OPINION

The material facts concerning this appeal are undisputed and have been stipulated to by the parties. Security Equipment Supply, Inc. ("SES") is a Missouri corporation that sells security-related electronic equipment such as burglar alarm systems, fire alarm

systems, closed-circuit television cameras, access control systems, and electrical wiring. SES's customers are licensed alarm contractors that purchase equipment, such as security access keypads, motion detectors, closed-circuit cameras, control panels, power supplies, card readers, and the electrical wiring.[1] The contractors install the equipment into homes and businesses to serve as burglar alarm systems, fire alarm systems, closed-circuit television systems, and/or access control systems. Thereafter, the licensed alarm contractors provide monitoring services for the systems they installed.

As a result of its operations in Tennessee, SES is required to pay taxes pursuant to the Business Tax Act, Tenn. Code Ann. §§ 67-4-701 to -730. In 2012, the Tennessee Department of Revenue ("the Department") conducted an audit of SES to ensure compliance with the Business Tax Act for the period of April 1, 2007, through March 31, 2011. At the conclusion of the audit, the Department assessed SES with $74,088.10 in tax liability, plus associated interest. The assessment was based on the Department's conclusion that SES had classified its sales to customers as "wholesale sales" when they should have been classified as "retail sales."

SES requested an informal conference with the Department which was held on July 16, 2012. On August 28, 2012, the Department issued a letter upholding the assessment. As a result, SES paid the assessment in full. On April 22, 2013, SES sought a refund of the business taxes by filing a claim for refund, which was denied by the Department.

Thereafter, SES filed suit pursuant to Tenn. Code Ann. § 67-1-1802(c)(1) challenging the Department's assessment of tax liability and denial of SES's claim for refund.[2] SES argued that "the assessment mistakenly categorizes the purposes of SES's sales and thus incorrectly deems SES as a retailer instead of a wholesaler." The Department filed an answer in which it asserted that SES's sales are retail sales under the Business Tax Act; therefore, the assessment was correct and SES is not entitled to a refund.

After trial, the chancery court found that SES's customers do not process the SES equipment further and do not simply resell SES's equipment; instead, they install the

---

[1] SES requires its Tennessee customers to be fully licensed with the Tennessee Alarm Systems Contractors Board and to submit an informational and credit application prior to purchase. Once approved by SES, customers can purchase products at one of SES's in-person locations, by phone, or through the SES website. SES locations are not open to the general public and SES only sells its products to qualified customers.

[2] Tenn. Code Ann. § 67-1-1802(c)(1) states, "A suit challenging the denial or deemed denial of a claim for refund shall be filed in the appropriate chancery court of this state within one (1) year from the date that the claim for refund was filed with the commissioner . . . ."

equipment into homes and businesses as systems which they use to conduct their service-oriented alarm monitoring business. Without the installation of the equipment by the licensed contractors into a system, the SES equipment is useless to the homeowner or business. Therefore, the court determined that SES's qualified customers are the true end users of the SES equipment. Based on these conclusions, the chancery court held that the sales in question were "retail sales" within the context of the Business Tax Act and denied SES's request for a refund. SES timely appealed.

## STANDARD OF REVIEW

The dispositive issue in this case is whether SES's sales are properly classified as wholesale or retail sales for taxation purposes. Addressing this issue requires us to interpret the provisions of the Tennessee Business Tax Act, Tenn. Code Ann. §§ 67-4-701 to -730, and the accompanying rules and regulations. *See* Tenn. Comp. R. & Regs. 1320-04-05-.47. The interpretation and application of statutes and regulations involve questions of law, which appellate courts review de novo without a presumption of correctness. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013).

When construing a statute, "our role is to ascertain and give effect to the General Assembly's purpose without unduly restricting or expanding the statute beyond its intended scope." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013) (citing *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013)). In so doing, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of the context in which they are used. *Id.* (citing *Shore*, 411 S.W.3d at 420).

"When a statute's language is clear and unambiguous, we will construe and apply its plain meaning." *Id.* (citing *Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d 88, 92 (Tenn. 2010)). Where ambiguity exists, we may consider, among other things, the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statue, the caption of the act, and the legislative history of the statute. *Id.* (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527-28 (Tenn. 2010); *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851-52 (Tenn. 2010)).

## ANALYSIS

The Business Tax Act is a component of Tennessee's scheme of privilege and excise taxes. *AAbackus, Inc. v. Huddleston*, No. 01A-01-9505-CH-00215, 1996 WL 548148, at *2 (Tenn. Ct. App. Sept. 25, 1996). Under the Business Tax Act, businesses are classified according to their "dominant business activity," which is defined as "the business activity that is the major and principal source of taxable gross sales of the business." Tenn. Code Ann. § 67-4-702(a)(5); *Najo Equip. Leasing, LLC v. Comm'r of*

*Revenue*, 477 S.W.3d 763, 767 (Tenn. Ct. App. 2015). These statutory classifications determine the applicable tax rate to be imposed on a particular business. *AAbackus, Inc.* 1996 WL 548148, at *2. Importantly for purposes of this case, the statute draws a distinction between "wholesale sales" and "retail sales," with the tax rate for wholesale sales being less than that for retail sales. *See* Tenn. Code Ann. § 67-4-709.[3]

The statutory definitions of "wholesale sale" and "retail sale" were amended several times throughout the audit period in this case.[4] Prior to June 30, 2009, the statute defined "wholesale sale" as "the sale of tangible personal property or services rendered in the regular course of business to a licensed retailer *for resale*, lease, or rental as tangible personal property in the retailer's regular course of business to a user or consumer." Tenn. Code Ann. § 67-4-702(a)(22)(A) (current through June 30, 2009) (emphasis added); *see also Pfizer, Inc. v. Johnson*, No. M2004-00041-COA-R3-CV, 2006 WL 163190, at *3 (Tenn. Ct. App. Jan. 23, 2006). A "retail sale" was defined as "the sale of tangible personal property or services rendered to a consumer or to any person for any purpose *other than for resale* . . . ; provided, that the sales for resale must be in strict compliance with rules and regulations." Tenn. Code Ann. § 67-4-702(a)(14)(A) (current through June 30, 2009) (emphasis added); *see also Pfizer, Inc.*, 2006 WL 163190, at *3.

In 2009, the statutory definitions were amended, but remained similar. The definition of wholesale sale was changed to "any sale to a retailer *for resale*." Tenn. Code Ann. § 67-4-702(a)(23)(A) (current through Aug. 10, 2010) (emphasis added). The definition of "retail sale" was changed to mean "any sale other than a wholesale sale." Tenn. Code Ann. § 67-4-702(a)(15) (current through Aug. 10, 2010). The Business Tax Act was also amended in 2010; however, the definitions of "wholesale sale" and "retail sale" remained unchanged by this amendment. *See* Tenn. Code Ann. §§ 67-4-702(a)(15) & (a)(24) (current through Aug. 4, 2011).[5]

As can be seen above, in most circumstances the key factor for distinguishing between retail sales and wholesale sales is whether or not the sales are "sales for resale."

---

[3] The applicable tax rates in this case are three eightieths of one percent (3/80 of 1%) of all wholesale sales, or one tenth of one percent (1/10 of 1%) of all retail sales. *See* Tenn. Code Ann. §§ 67-4-709(1)(A) & (C).

[4] As indicated above, the audit covered the period of April 1, 2007, through March 31, 2011.

[5] Additionally, the statute was revised in 2011, 2014, and 2016; however, these amendments occurred after the relevant audit period; thus, they are not at issue in this appeal. Nevertheless, the definitions of "wholesale sale" and "retail sale" remained consistent in these subsequent amendments as well. *See* Tenn. Code Ann. §§ 67-4-702(a)(15) & (a)(24) (current through June 30, 2014); Tenn. Code Ann. §§ 67-4-702(a)(16) & (a)(25) (current through Dec. 31, 2015); Tenn. Code Ann. §§ 67-4-702(a)(16) & (a)(26) (current through the end of the 2016 Second Regular and Second Extraordinary Sessions of the 109th Tennessee General Assembly).

*Compare* Tenn. Code Ann. § 67-4-702(a)(22)(A) (current through June 30, 2009); *with* Tenn. Code Ann. § 67-4-702(a)(23)(A) (current through Aug. 10, 2010). Rule 47 of the Business Tax Rules and Regulations provides further explanation as to when sales constitute "sales for resale." *See* Tenn. Comp. R. & Regs. 1320-04-05-.47 (current through Sept. 26, 2016).[6] The rule has five subsections. The first three subsections of Rule 47 state,

> (1) Sales for resale include those whereby a supplier of materials, supplies, equipment and services makes such tangible personal property or services available *for further processing as a component part of a product* to legitimate dealers engaged in and actually reselling or leasing such property to a user or consumer. Sales to a manufacturer or processor for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product are likewise considered sales for resale.
>
> (2) Sales of tangible personal property and services to a licensed retailer who may make further distributions from a central warehouse or other distribution point to others for resale shall be deemed to be wholesale sales, and the licensed retailer shall be liable for wholesale tax on any such distributions if receipts from such exceed 20% of his total sales.
>
> (3) Sales made by a wholesaler to another wholesaler shall be deemed wholesale sales and taxable at the appropriate tax rate. Wholesale sales s hall not include the transfer of tangible personal property from a wholesaler to another wholesaler where the amount paid by the transferee to the transferor does not exceed the transferor's cost including freight in and storage cost and transportation costs incurred in the transfer from the transferor to the transferee.

*Id.* (emphasis added).

Subsection 4 of Rule 47 specifies that,

> (4) The price charged by the vendor for tangible personal property or services or the quality of such property or services is immaterial in determining whether or not a sale is one for resale. *The controlling factor is what the vendee does with his purchase*.

---

[6] Rule 47 was amended on September 26, 2016. *See* Tenn. Comp. R. & Regs. 1320-04-05-.47. However, our focus is on the rule as it existed during the relevant period in this case. Thus, unless otherwise noted, this opinion will focus on the language of Rule 47 as it exited during the audit period of April 1, 2007, through March 31, 2011.

*Id.* (emphasis added).

Subsection 5 of Rule 47 describes certain sales which may appear to be wholesale sales, but should be classified as "retail sales" for taxation purposes. The rule provides,

> (5) Sales to a *contractor* who in the course of performing his contract *installs property or uses services in a structure, as a component part thereof*, are retail sales to a user or consumer, and are taxable at the appropriate retail rate.

*Id.* (emphasis added).

In this case, the Department classified SES's dominant business activity as retail sales based on the conclusion that SES's sales fall within subsection 5 of Rule 47. SES, however, argues that its sales fit within the subsection 1 of Rule 47 and should be considered wholesale sales because it sells equipment to dealers who further process the equipment as a component part of the comprehensive product they sell to the end user.

As can be seen from subsection 4 of Rule 47, the controlling factor for determining whether a sale is one for resale is "what the vendee does with the purchase." *See* Tenn. Comp. R. & Regs. 1320-04-05-.47(4). Here, SES's customers consist of licensed alarm contractors that purchase equipment such as in-ceiling audio speakers, keypads, motion detectors, closed-circuit cameras, control panels, power supplies, card readers, and the electrical wiring. SES's customers do not process the equipment further, but install the equipment into homes and businesses as part of burglar alarm systems, fire alarm systems, closed-circuit television systems, and access control systems.

Thus, because SES's customers are contractors that install the SES equipment into homes and businesses, it would appear that SES's sales fall within subsection 5 of Rule 47. Nevertheless, SES argues that, because its equipment is removable from the real property on which it is installed, subsection 5 of Rule 47 is inapplicable.

Subsection 5 does not require that the property that is installed constitute a "fixture" or be permanently assimilated into realty in order for the sale to constitute a "retail sale." *See* Tenn. Comp. R. & Regs. 1320-04-05-.47(5) (current through Sept. 26, 2016); *Harry J. Whelchel Co. v. King*, 610 S.W.2d 710, 714-15 (Tenn. 1980) (describing the requirements for a chattel to constitute a "fixture"). Instead, the rule states that sales to a contractor will be considered "retail sales" if the contractor "installs property or uses services in a structure, *as a component part*" of the structure. Tenn. Comp. R. & Regs. 1320-04-05-.47(5) (current through Sept. 26, 2016) (emphasis added). Here, in completing installation of the equipment purchased from SES, SES's customers physically attach the equipment to the homes and businesses in which the equipment is

installed, and wiring is run throughout the walls and ceilings of the buildings. Once installed, this equipment performs integral functions such as restricting access to the buildings, protecting the buildings from fire and other damage, and guarding these structures against theft.

Based on these facts, we believe that SES's equipment is a "component part" of the structures in which it is installed. Thus, SES's sales fall within subsection 5 of Rule 47. SES's customers are contractors that install equipment purchased from SES into homes and businesses as a component part of those structures. Therefore, SES sales constitute "retail sales" and are taxable at the retail rate under the Business Tax Act. Accordingly, we affirm the judgment of the chancery court.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Security Equipment Supply, Inc.

_____
FRANK G. CLEMENT, JR., P.J., M.S.